**Electronically Filed
Supreme Court
SCWC-13-0001498
30-JUN-2016
07:46 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

DORINDA HAMILTON,
Petitioner and Respondent/Plaintiff-Appellant/Cross-Appellee,

vs.

DAVID HAMILTON,
Petitioner and Respondent/Defendant-Appellee/Cross-Appellant.

SCWC-13-0001498

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0001498; FC-D NO. 10-1-163K)

JUNE 30, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

This case arises from an appeal and cross-appeal from monetary decisions in a Divorce Decree.  David Hamilton ("Husband") and Dorinda Hamilton ("Wife") seek review of the Intermediate Court of Appeals' ("ICA") September 25, 2014 Judgment on Appeal, filed pursuant to its August 29, 2014

Memorandum Opinion. The ICA affirmed in part and vacated in part the June 7, 2013 Divorce Decree of the Family Court of the Third Circuit ("family court").[1]

The parties dispute the impact of a multi-million dollar inheritance received by Husband on the family court's determinations of property division, alimony, and attorney's fees and costs. With respect to property division, the family court found that a premarital economic partnership existed and implied that proceeds from an illegal marijuana operation may have constituted a portion of the marital real estate. In ultimately dividing and distributing the property, the family court awarded all inheritance funds remaining at trial to Husband as his marital separate property. It credited Husband for all sums withdrawn from his inheritance funds as a capital contribution to the marital estate. It then deducted these sums from the marital estate, thereby creating marital debt. That marital debt was then equally split between the parties, resulting in Wife owing Husband a substantial equalization payment. The family court then found that equitable considerations justified a deviation from marital partnership principles and credited Wife with an amount equal to her equalization payment. The family court awarded Wife spousal support during the pendency of the divorce proceedings and until

---

[1] The Honorable Aley K. Auna, Jr., presided.

December 2016, and the court also awarded her attorney's fees and costs.

On appeal, the ICA ruled that the family court's premarital economic partnership finding was erroneous because it was based in part on an illegal business enterprise. The ICA vacated and remanded the portions of the Divorce Decree pertaining to property division and spousal support to the family court for recalculation after segregating proceeds from the illegal marijuana operation.

We hold that, under the circumstances of this case, the ICA erred in vacating the property division and alimony awards to require a recalculation of these awards based on a segregation of proceeds from the illegal marijuana operation. We also hold that the family court erred, either by characterizing the entire $1,511,477 expended from Husband's inheritance account as Marital Partnership Property or by characterizing the $2,051,293 remaining in his inheritance account as Marital Separate Property, because the $1,511,447 expended included payment of inheritance taxes on Husband's entire inheritance, and if inheritance taxes are paid out of Marital Partnership Property, the remaining inheritance cannot be classified as Marital Separate Property. We further hold that the family court erred in summarily ruling before trial that all funds expended by Husband from his Marital Separate Property inheritance account

constituted Category 3 Marital Partnership Property for which he was entitled to be repaid, without requiring Husband to fulfill his burden of establishing that such expenditures were in the nature of a contribution to or an investment in Marital Partnership Property, and then compounded the error by failing to allow and consider evidence of donative intent. We also hold that the family court erred in ordering an equal distribution of alleged partnership capital losses before deciding whether equitable considerations justified deviation from an equal distribution. Finally, we hold that the family court improperly applied marital partnership principles to fashion a property division award that was not just and equitable. We find no error in the award of attorney's fees and costs.

We therefore affirm in part the ICA's Judgment on Appeal to the extent that it vacated the property division and alimony awards and remanded the case to the family court, but vacate the portion of the ICA's Judgment on Appeal directing the family court on remand to segregate the proceeds of the alleged marijuana operation from the property division. We remand the case to the family court for further proceedings consistent with this opinion.

## II.  Background

Husband and Wife were married on June 21, 1985 ("date of marriage") and separated in June 2010.  The couple has two adult children.

The parties met in early 1976 in New Zealand and began living together there soon after that.  At the time, Wife had just finished her final semester at the University of Hawai'i at Hilo, while Husband worked on repairing a home and a forest restoration project.  Approximately four or five months later, the parties moved to Massachusetts, where they lived and worked on Husband's family's farm and store for about three months.

After leaving Massachusetts, the parties moved to the island of Hawai'i ("Big Island") in November 1976, where Husband began working on a county road crew.  While on the Big Island, the parties apparently started an illegal marijuana operation.  Wife testified that she was involved in the processing and transportation of the marijuana.  Husband testified that the parties did not have a joint or mutual marijuana operation.  He indicated it was a sideline with a few friends that continued until his son was born in 1987.

At trial, the parties disputed whether marijuana proceeds were used to purchase real property.  Wife testified that marijuana proceeds were used to purchase multiple properties prior to the date of marriage, as well as one additional

property after the date of marriage, while Husband denied that allegation. On one of the properties, purchased in 1978 and titled in Husband's name, the parties jointly constructed a two-story house.

In 1990, five years after the date of marriage, Husband obtained his real estate brokerage license. In 2003, he opened his own real estate firm. Husband testified that his income declined in 2006 due to a falling market and his father's passing. After Wife's 2010 divorce filing, Husband reported his gross monthly income as $1,000.

Wife performed part-time work or was a housewife not employed outside the home for much of the parties' relationship. From approximately 1996 to 2009, Wife worked part-time at her children's schools to obtain tuition assistance and health insurance. She also sold hand-painted clothing. As of the date of final separation in contemplation of divorce ("date of final separation"), she was collecting unemployment benefits. At the date of conclusion of the evidentiary portion of trial ("conclusion of trial"),[2] she earned approximately $1,500 per month as a nanny.

Between 2007 and 2011, Husband inherited amounts totaling $3,550,770 from his parents' estates. He deposited the monies

---

[2] The family court's February 13, 2013 Order Re: Divorce Trial Held on December 22 and 23, 2011 specified that December 22 and 23, 2011 should be considered the conclusion of trial.

into his separate Bank of Hawai'i account ("inheritance account"). At the conclusion of trial, the inheritance account had $2,051,293 remaining.

Prior to marriage, the parties filed no joint tax returns.

**A. Family Court Proceedings**

**1. Pre-Trial Proceedings**

On June 23, 2010, Wife filed a Complaint for Divorce. She then filed a motion for temporary relief, seeking, in part, temporary spousal support. In granting this request, the family court made the following finding:

> Husband has historically used his existing inheritance funds for payment of the marital expenses and Wife's support. Having reviewed Wife's Income and Expense statement filed, the [family court] finds that it would be just and equitable to order that in addition to the above support orders, Husband shall pay to Wife $2000 per month in temporary spousal support beginning October 1, 2010.

Wife later moved for an advance of attorney's fees, indicating a gross monthly income of $2,080. Wife contended that an advance for fees was necessary because Husband had filed multiple pretrial motions for partial summary judgment. The family court granted the request for attorney's fees without prejudice to additional subsequent requests from Wife for good cause shown, and ordered Husband to advance $25,000 to Wife's counsel.

One of Husband's pretrial motions for partial summary judgment, entitled "Husband's Motion for Partial Summary

Judgment to Strike the Defense and/or Argument that Husband Wasted his Category 3 Assets by Spending Money on Items Not Related to the Marriage or the Children" ("Category 3 motion for partial summary judgment"), asserted that Wife could not provide admissible evidence to establish that he "wasted" Category 3 assets.[3]  In a declaration in support of the motion, Husband asserted:

> In response to Plaintiff's Request for Answers to Interrogatories and for Production of Documents and Things, request number 9, I itemized all of the disbursements I made from my inheritance money with the exception of $88,597.80, which was disbursed for the marriage and children's expenses.  This amount was not itemized in Defendant's response to Plaintiff's interrogatory number 9, either because it consisted of small dollar transactions too numerous to breakdown [sic], e.g.[sic] $70 to KTA, etc [sic], or the credit card amounts were too difficult to itemize the family or children expenses [sic] without additional extensive effort, i.e.[sic] recreating the complete accounting.

Although Husband's motion summarily asserted that all sums expended were for marital and children's expenses, his response to interrogatory number 9 included amounts such as $111,885.00 to the Commonwealth of Massachusetts Taxes and $326,540.00 to the United States Treasury.  In addition, Husband's heading for his interrogatory 9 itemization of alleged Category 3 disbursements included the following characterization: "Category 3 Inheritance Account."  After this heading, he included the inheritance tax payments.

---

[3]  Category 3 property includes the date-of acquisition net market value, plus or minus, of property separately acquired by one spouse by gift or inheritance during the marriage but excluding the net market value attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.  Tougas v Tougas, 76 Hawaiʻi 19, 27, 868 P.2d, 437, 445 (1994) (citation omitted).

Wife objected to the motion based on Husband's failure to establish prima facie entitlement to a grant of the motion and due to the existence of genuine issues of material facts as to whether all sums were expended for marital purposes. The family court nevertheless granted this motion, ruling[4] that "[Husband] spent his Category 3 assets for marital purposes[] [for] which he is entitled to be repaid."

### 2. Trial Order and Divorce Decree

After trial, on February 13, 2013, the family court entered its Order Re: Divorce Trial Held on December 22 and 23, 2011. The family court found that the parties had formed a premarital economic partnership in 1976 that lasted until they married in 1985:

> 9. The parties met in New Zealand in 1976. They began living together soon after they met. They continued to cohabitate uninterrupted until DOM.
>
> 10. The parties financially supported each other during their cohabitation before DOM.
>
> 11. They resided and worked together in New Zealand, Massachusetts, and Hawaii prior to DOM.
>
> 12. Husband worked at various jobs while Wife contributed her services to their living arrangement. Wife did, however, work on Husband's parents' farm and store in Massachusetts, which contributed to the parties' living expenses and support.
>
> 13. After moving to Hawaii and prior to DOM, Husband worked for the County of Hawaii. The parties received food stamps and Husband received a stipend from the State of Hawaii. Wife was not employed, but contributed to the parties' living support.

---

[4] The family court's ruling appears in an order denying a different amended motion for partial summary judgment.

> 14. In 1977, the parties started growing marijuana and both worked on growing, processing, transporting the finished product, and selling it.
>
> 15. In 1978, the parties jointly purchased property for $17,000. The parties jointly built a two-story house on that property.
>
> 16. During 1977 and 1978 the parties travelled together to Thailand to look for orchids to establish an orchid company with other business partners. They purchased orchids and shipped them back to Hawaii.
>
> 17. The parties also bought and sold other real property prior to DOM from the proceeds of their joint earnings.

From 2007 to 2011, Husband inherited from his parents' estates amounts totaling $3,550,770, and he deposited these funds into his separate inheritance account. As of the conclusion of trial, $2,051,293 remained in Husband's inheritance account. The family court found that the parties had no written premarital or post-marital agreement, and categorized this sum as Husband's Marital Separate Property, finding:

> 24. Husband expressly classified his inherited funds as his separate property by depositing them into the Bank of Hawaii and labeled it "separate." This account was created solely for the purpose of holding and maintaining Husband's inheritance. No funds from any other source were deposited into this account and this account was maintained by itself and was funded only by interest earned.

The family court also found that the entire $1,499,477 withdrawn by Husband had been used "to invest in a business that eventually failed and has no present value, for the purchase of the Kala Cottage office, automobiles, and other assets, to fund the Vanguard account in the amount of $50,000, to pay taxes, to pay for the private school and post-high school education of the

parties' children, and to support and maintain the family and the family's lifestyle." Consistent with its pretrial summary judgment ruling, the family court then found that the entire amount was a Category 3 capital contribution credit. With an additional $12,000 for a 2009 cash gift from Husband's mother to him that had apparently been spent, the family court found that Husband's Category 3 credits totaled $1,511,477.

As noted earlier, the family court had already ruled before trial that Husband was entitled to be repaid all of his Category 3 expenditures as having been used for marital purposes. After trial, the family court found that "[that] Wife did not meet her burden that Husband specifically intended these funds as a gift to her.

By the conclusion of trial, the value of the parties' assets was $466,522. Because of its finding of $1,511,477 in Category 3 expenditures by Husband, the family court found a marital estate valued at negative $1,044.955, for which Wife would otherwise have to repay Husband $522,478 as an equalization payment. For property division, Wife was awarded $1,396 in bank accounts, a retirement account worth $13,000, and a used Suzuki valued at $13,000. Wife's equalization payment increased by half of those amounts, to a total of $549,873.

In addition to retaining the $2,051,293 remaining in his inheritance account, for property division, Husband was awarded

$57,835 in liquid cash accounts, a $8,645 IRA account, a $32,865 Chevy Camaro, a $1,000 Jeep Cherokee, the marital residence with equity of $243,781, and his office cottage then valued at $95,000.

With respect to the marital residence and the office cottage awarded to Husband, the family court found that in 2007, Husband had purchased it for $180,000 with inheritance funds. Prior to its purchase, Wife had co-signed a $250,000 equity loan secured by the marital residence so that Husband could purchase the cottage for his real estate business. The equity loan was supposed to be paid off from the anticipated inheritance, and Wife testified she would not have agreed to co-sign the home equity loan if she had known that Husband was not going to pay off the equity loan with his inheritance.

Both parties were awarded their respective personal and household property.

Because of the significant equalization payment that would otherwise be owed by Wife to Husband, the family court then determined that sufficient "valid and relevant considerations" [5]

---

[5] Hawai'i courts frequently refer to "valid and relevant considerations", "valid and relevant circumstances", and "equitable considerations" when discussing deviation from partnership principals. Equitable considerations permit the family court to deviate from the partnership model in dividing the parties' Marital Partnership Property upon divorce. Hussey v. Hussey, 77 Hawai'i 202, 208, 881 P.2d 1270, 1276 (App. 1994) ("If the family court rightly decides that all valid and relevant considerations are not equal, the family court must assess and weigh all valid and relevant considerations, exercise its equitable discretion, and decide whether and, if so, how much to deviate from the Partnership Model.").

existed to justify an equitable deviation from marital partnership principles. It ruled that giving Wife a credit equal to her equalization payment would be just and equitable. In support of this deviation, the family court considered the following:

> 57. . . . Wife's equalization payment to Husband is substantial.
>
> 58. Husband's marital separate property and Category 1 and 3 capital contribution credits far exceed the value of the property that is being allocated between the parties.
>
> . . . .
>
> 60. Wife is 57 years old and has been employed from time to time at little over minimum wage over the years the parties have been together. She needs further assistance to meet her needs at the lifestyle she has been accustomed to during the years the parties resided together.
>
> 61. Husband is 59 years old, has worked all his life, has owned and operated several businesses, and has sufficient assets to support himself very well for a number of years.
>
> 62. Husband's employability is much better than Wife's.
>
> 63. Husband is entitled a substantial capital contribution credit due of his Category 1 and 3 assets. Wife will be left with comparably very nominal assets. Further, Husband has substantial marital separate property he inherited from his parents' estates.
>
> 64. The parties started their PEP in 1976 and have resided together for about 34 years. This is a relatively long relationship.

As to spousal support, the family court made the following findings:

> 68. The parties have lived together since 1976 and separated in 2010. Over these approximate 34 years, they have enjoyed a modest life style; raising children together, purchasing and selling real property, operating several businesses, building the marital residence, etc. Husband was the primary bread winner. Although Wife worked from time to time, she remained primarily a homemaker the

13

majority of the time and generally stayed at home to raise the parties' children and to support the family. The children attended private school and they are now adults.

69. When Wife was laid off from Parker School in 2009, she began receiving unemployment benefits. In 2011 she found work as a nanny and makes approximately $1,600 gross a month.

70. Husband inherited over 3.5 million dollars from his parents' estates resulting in the parties enjoying a relatively higher standard of living. Wife enjoyed regular therapy, massages, new clothing, and elective cosmetic dental work. Husband enjoyed an expensive vintage car and multiple trips to Southeast Asia. They built a modest home together.

71. Wife has received $2,000 per month in court-ordered temporary spousal support.

72. Wife is employable, albeit limited, because of her age.

73. After divorce, Wife will, however, need continued support to pay for her health insurance and other medical expenses as well as to assist her in other daily and monthly expenses.

74. Following the divorce, Wife will no longer have the benefit of residing at the marital residence. She will now need further financial assistance.

75. Husband currently spends about $12,000 per month for family support. He will now live at the marital residence. His monthly expenses will go down.

76. It would be just and equitable to award Wife continued spousal support for a period of five years commencing January 2012 (the month following trial), as follows: $2,000 per month until Wife moves out of the marital residence, then $3,000 per month commencing the first month after Wife moves out of the marital residence and through December 2017.

Later, in response to Husband's motion for reconsideration, the family court amended finding of fact No. 76 regarding spousal support to reduce Wife's alimony award by one year.[6]

_____

[6] In addition to reducing the length of Wife's alimony award, the family court also added the following sentence: "Spousal support shall terminate upon Wife's remarriage or upon the death of either Husband or Wife."

As to attorney's fees and costs, the family court concluded that because of Husband's superior financial condition, it would be just and equitable to award Wife a portion of her attorney's fees and costs up to $5,000. Wife's counsel later submitted an itemized accounting of fees incurred through preparation of the closing argument and reply, reflecting fees and costs totaling $86,126.17.[7] On June 7, 2013, the Family Court entered its Divorce Decree.

## B. Appeal to the ICA

Wife appealed and Husband cross-appealed to the ICA. The ICA first addressed Husband's cross-appeal.

### 1. Husband's Cross-Appeal

In his appeal, Husband argued that the family court erred when it (1) found a premarital economic partnership existed based on illegal marijuana sales, (2) denied Husband Category 1 credits for property in his name at the date of marriage, (3) found equitable deviation and waived the equalization payment, and (4) awarded Wife temporary spousal support and attorney's fees before trial based on his inheritance. Husband requested that the family court's decision be vacated and remanded and that the attorneys' fees and costs award be reversed.

---

[7] Wife's counsel stated that this amount did not include the attorney's fees incurred after the reply, which were still accumulating.

15

Noting that "[t]he family court considered the parties' joint financial acts, cohabitation since 1976, economic and non-economic contributions, and other financial arrangements in finding that the parties formed a premarital economic partnership in 1976," the ICA stated that one basis for the premarital economic partnership finding was "the parties' 'growing, processing, transporting the finished product, and selling' marijuana in 1977." Hamilton v. Hamilton, No. CAAP-13-1498, at 12 (App. Aug. 29, 2014) (mem.). The ICA ruled that the family court's equitable powers to divide marital property pursuant to HRS § 580-47 do "not authorize [the family court] to provide relief to parties to an illegal agreement." Hamilton, mem. op. at 13. The ICA concluded, however, that "[t]he fact that the parties' illegal marijuana operation provided funds for their premarital economic partnership was not determinative of whether the partnership was valid." Hamilton, mem. op. at 15. Therefore, the ICA rejected Husband's argument that the illegal marijuana business was the foundation of the premarital economic partnership on the bases that (1) "[n]o evidence presented reasonably supported a finding, that the purpose of the parties' premarital cohabitation and financial arrangements was the growing and sale of marijuana[,]" and (2) evidence of the parties' premarital non-marijuana operations sufficiently

support a finding that a premarital economic partnership existed as a matter of law.  Id.

Although the ICA determined that the family court's premarital economic partnership finding was not in error, it ruled that the "finding that the parties' marijuana operation was part of that premarital economic partnership constitutes an error as a matter of law."  Id.  In this regard, the ICA ruled that "[t]he family court should have segregated the illegal marijuana operation from its consideration of the parties' alleged premarital economic partnership."  Id. (citing 59A Am. Jur. 2d Partnership § 54 at 233 (separation of mixed legal and illegal purposes)).  Therefore, the ICA concluded that the premarital economic partnership was "valid to the extent that it included legal partnership activities and its 'legitimate objectives' can be segregated from the illegal marijuana business."  Hamilton, mem. op. at 16.  Noting the parties' conflicting testimony as to whether marijuana proceeds were used to purchase real property, the ICA explained that "[s]egregating the economic contribution of the marijuana operation to the parties' premarital economic partnership, however, would require a credibility determination regarding [the parties'] testimony as to whether proceeds from the marijuana operations were used to purchase [certain properties] and, further, ascertaining how the proceeds from the subsequent sales of those properties were

17

allocated to marital and legitimate premarital assets." Id.
The ICA vacated the family court's Divorce Decree, in part, and
remanded with instructions to re-assess the property division in
consideration of a premarital economic partnership excluding the
marijuana operation. Hamilton, mem. op. at 16-17.

Next, as to equitable deviation, the ICA concluded that
"the family court's application of its finding that a premarital
economic partnership existed to support deviation from the
Partnership Model constituted reversible error to the extent the
deviation was based on the illegal marijuana business."
Hamilton, mem. op. at 17.

With respect to temporary alimony awarded to Wife during
the pendency of the divorce, the ICA held that "[t]here was no
abuse of discretion in the family court's consideration of
[Husband's] financial resources in ordering temporary spousal
support for [Wife]." Hamilton, mem. op. at 18.

As to attorney's fees, the ICA rejected Husband's argument,
noting a lack of authority in support of Husband's contention
that the award would "invade" his inheritance, as well as the
family court's authority to award attorneys' fees and costs
during the pendency of divorce proceedings under HRS § 580-9 and
divide property under HRS § 580-47(a). Hamilton, mem. op. at
18. The ICA therefore concluded that the family court did not
err in "allocating responsibility for attorneys' fees and costs

18

amongst the parties upon granting the divorce." Hamilton, mem. op. at 19. Accordingly, the ICA held that "[t]he family court did not abuse its discretion by awarding [Wife] $5,000 in attorneys' fees and costs in its Order Re: Divorce Trial." Id.

The ICA also rejected Husband's argument that the Order Re: Fees and Costs was void for lack of jurisdiction, explaining that the "Order Re: Fees and Costs confirmed the $5,000 award that had already been set in the [] Order Re: Divorce Trial . . . ." Hamilton, mem. op. at 20.

### 2. Wife's Appeal

In her appeal, Wife argued that the family court erred when it (1) treated 60% of Husband's inheritance as Marital Separate Property and 40% as Category 3 assets, (2) subtracted capital contributions in excess of the marital assets and found that Wife owed Husband for half of the partnership loss, (3) awarded Wife virtually nothing from the marital estate, and (4) awarded insufficient post-divorce alimony.

The ICA rejected Wife's arguments regarding Husband's inheritance and capital contribution credits, holding that "[t]he family court did not abuse its discretion in determining that [Husband] could be credited for expenditures from the Inheritance Account for household expenses." Hamilton, mem. op. at 23. Nevertheless, the ICA declined to affirm the family court's findings in support of the property division on the

basis that the court's "reliance on [an erroneous premarital economic partnership finding] to justify equitable deviation constitutes reversible error."  Id.; accord id. at 24.

Regarding post-divorce alimony, the ICA concluded that "[t]he family court considered all required factors and determined [Wife] would be able to find employment to support herself by the end of December 2016."  Hamilton, mem. op. at 24 (citing HRS § 580-47(a)).  Nevertheless, the ICA "vacate[d] the [post-divorce] alimony award as reversible error[]" to the extent that it "may have been premised, in part, on premarital activities connected to the illegal marijuana operations," and directed the family court on remand to "exclude from its determination of [Wife's] alimony award any consideration of those premarital economic activities connected to the marijuana operation."  Hamilton, mem. op. at 25.

Accordingly, the ICA vacated Parts Four and Five of the Divorce Decree regarding alimony and property division, affirmed all other parts, and remanded the case for further proceedings.

## C.    Applications for Writs of Certiorari

### 1.    Husband's Application

In summary, Husband argues that the family court erred in (1) finding that a premarital economic partnership based on an illegal marijuana business venture existed, where the parties kept their finances separate prior to marriage; (2) deviating

20

from the Marital Partnership Model based on his inheritance; (3) awarding Wife temporary alimony during the divorce proceeding; (4) and awarding Wife attorneys' fees and costs.

### 2. Wife's Application

In summary, Wife alleges that the family court erred in its (1) characterization of all amounts inherited by Husband as Marital Separate Property, (2) characterization of the entire $1,511,477 apparently then expended by Husband from his inheritance as Category 3 Marital Partnership Property for which Husband is entitled to be repaid; (3) finding that Wife incurred a debt to Husband payable by an equalization payment when their marital partnership assets were insufficient to repay the alleged Category 3 expenditures; (4) application of equitable deviation principles in it property division award; and (5) failure to consider altering the amount and duration of alimony to compensate Wife for the one-sided property division. Wife also challenges the ICA's decision to remand the case to the family court on the "minor issue" of the illegal marijuana operation, without addressing Husband's $3.5 million inheritance.

We address the issues on certiorari as follows.

## III. Standards of Review

### A. Family Court Decisions

> Generally, the family court possesses wide discretion in
> making its decisions and those decisions will not be set

> aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decision on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012) (quoting Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006)).

> It is well established that a family court abuses its discretion where "(1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason."

Id. at 155-56, 276 P.3d at 724-25 (emphasis omitted) (quoting Tougas v. Tougas, 76 Hawai'i 19, 26, 868 P.2d 437, 444 (1994)).

## B. Property Division

Hawaii's appellate courts "review the family court's final division and distribution of the estate of the parties under the abuse of discretion standard, in view of the factors set forth in HRS § 580-47 and partnership principles." Tougas, 76 Hawai'i at 26, 868 P.2d at 444 (quoting Gussin v. Gussin, 73 Haw. 470, 486, 836 P.2d 484, 492 (1992) (footnote omitted)). "The family court's determination of whether facts present valid and relevant considerations authorizing a deviation from the partnership model division is a question of law that this court reviews under the right/wrong standard of appellate review." Gordon v. Gordon, 135 Hawai'i 340, 348, 350 P.3d 1008, 1016

(2015) (citing <u>Jackson v. Jackson</u>, 84 Hawaiʻi 319, 332–33, 933 P.2d 1353, 1366–67 (App. 1997)).

### C. Findings of Fact and Conclusions of Law

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard.  A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.  "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
>
> > On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard.  COLs, consequently, are [ ]not binding upon an appellate court and are freely reviewable for their correctness.

<u>Kakinami</u>, 127 Hawaiʻi at 136, 276 P.3d at 705 (quoting <u>Fisher</u>, 111 Hawaiʻi at 46, 137 P.3d at 360).

## IV. Discussion

### A. Illegality and the Premarital Economic Partnership

The ICA ruled that although there was substantial other evidence of a premarital economic partnership, the property division and alimony awards needed to be recalculated to exclude consideration of premarital economic activities connected to the marijuana operation.

Husband argues that the ICA erred in concluding that (1) the fact that the parties' illegal marijuana operation provided funds for their premarital economic partnership was not determinative of whether the partnership was valid; and (2) legal partnership activities existed that could be segregated

23

from the marijuana operation.  He contends that "even a partial reliance on an illegal enterprise would be contrary to public policy and would require a finding that no PEP existed."  In addition, Husband asserts that insufficient evidence existed to support the premarital economic partnership insofar as "it is clear that both the parties did not intend to create a PEP."

Wife contends that the ICA did not err in affirming the premarital economic partnership finding because (1) Husband's "trial testimony flatly contradicts [his] position asserted on appeal[]" to the extent that Husband denied having a "joint or mutual marijuana operation" at trial and testified that premarital properties held in his name were purchased with "savings," "not marijuana money[;]" (2) Husband failed to raise his illegality argument below; and (3) Husband "cannot use this couple's marijuana business 25 years ago to eliminate the PEP, but also demand $125,000 in Category 1 credits for assets purchased in his name before DOM with [marijuana proceeds]."  In addition, Wife asserts that the family court found independent grounds for the premarital economic partnership.

It is true that, generally, courts will not enforce an illegal agreement.  According to the United States Supreme Court, "[i]n case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged

rights directly springing from such contract."  McMullen v. Hoffman, 174 U.S. 639, 654 (1899).  With respect to cases that involve partly illegal and partly legal partnership purposes, however, courts are split as to whether recovery is available to parties to the illegal transaction.  For example, although the Court stated in McMullen that "[i]t has been sometimes said that where a contract, although it be illegal, has been fully executed between the parties, so that nothing remains thereof for completion, if the plaintiff can recover from the defendant moneys received by him without resorting to the contract the court will permit a recovery in such case[,]" 174 U.S. at 654-55, it held in Bruce's Juices v. American Can Co., 330 U.S. 743 (1947) that "[w]here a contract is outlawed by statute or is otherwise contrary to public policy, the illegality may be set up as a defense to a suit for enforcement despite the absence of a legislative recognition of that defense."  330 U.S. at 761.

The Court has also held, however, that where proceeds from an illegal operation have changed form, recovery may be possible despite the initial illegality.  In Brooks v. Martin, 69 U.S. 70 (1864), the Court held that "[a]fter a partnership contract confessedly against public policy has been carried out, and money contributed by one of the partners has passed into other forms, . . . a partner, in whose hands the profits are, cannot refuse to account for and divide them on the ground of the

25

illegal character of the original contract." 69 U.S. at 71 (emphasis omitted).

Hawaiʻi cases have also addressed enforcement of illegal contracts. In Beneficial Hawaii, Inc. v. Kida, 96 Hawaiʻi 289, 30 P.3d 895 (2001), this court stated, "the general rule is that severance of an illegal provision of a contract is warranted and the lawful portion of the agreement is enforceable when the illegal provision is not central to the parties' agreement and the illegal provision does not involve serious moral turpitude, unless such a result is prohibited by statute." 96 Hawaiʻi at 311, 30 P.3d at 917. In analyzing the availability of relief to parties to an illegal transaction in Rego v. Bergstrom Music Co., 26 Haw. 407 (Terr. 1922), the territorial court initially explained that recovery is not available to a plaintiff who resorts to an illegal transaction, either in whole or in part, to establish a prima facie case or defense despite joint participation by the opposing party. 26 Haw. at 410-11 ("Neither a plaintiff nor a defendant may found his case, either in whole or in part, upon a fraudulent transaction, although his antagonist may have participated therein." (internal quotation marks and citation omitted)). Despite holding that a party may not base his or her case upon an illegal transaction, however, Rego further held that "a plaintiff may recover if he is able to make out his case without calling upon the fraud for help[;

26

however,] he must fail if such help is indispensable." 26 Haw. at 411.

In this case, Wife is not requesting enforcement of an illegal agreement. Rather, she requests a division of marital property and an alimony award. In a divorce case, the family court's obligation is to rule in a "just and equitable" manner. HRS § 580-47(a). At trial, Husband denied that proceeds from the marijuana operation were included in any marital property, denied keeping records, and denied depositing marijuana proceeds into bank accounts. Thus, it appears that the ICA's mandate to exclude consideration of such proceeds to recalculate property division and alimony is impracticable. In addition, the illegal enterprise is no longer in existence, and Wife is requesting a property division award from proceeds that have changed form, into real estate.

Furthermore, as the ICA otherwise correctly concluded, substantial other evidence of the parties' premarital, non-marijuana operations sufficiently supports the finding that a premarital economic partnership existed as a matter of law. Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (quoting In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001)) ("'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.").

"[A] premarital economic partnership is formed when, 'prior to their subsequent marriage, [two people] cohabit and apply their financial resources as well as their individual energies to and for the benefit of each other's person, assets, and liabilities.'" Collins v. Wassell, 133 Hawaiʻi 34, 45, 323 P.3d 1216, 1227 (2014) (citation omitted). The formation of a premarital economic partnership depends upon the parties' intentions. Id. In determining whether the parties intended to form a premarital economic partnership, in the absence of an express agreement, "the family court must consider the totality of the circumstances, including both the economic and non-economic contributions of the parties." 133 Hawaiʻi at 46, 323 P.3d at 1228 (citation omitted). "[R]elevant considerations may include, but are not limited to, joint acts of a financial nature, the duration of cohabitation, whether — and the extent to which — finances were commingled, economic and non-economic contributions to the household for the couple's mutual benefit, and how the couple treated finances before and after marriage." Id.

First, the family court's findings that the parties resided and worked together in New Zealand, Massachusetts, and Hawaiʻi prior to their date of marriage, and financially supported each other during their cohabitation before marriage are supported by the parties' testimony. The testimony established that over the

course of one year, the parties met in New Zealand, flew to Honolulu where they stayed with Wife's mother for one to two weeks, flew to Los Angeles where they purchased a van with funds provided by Wife's mother, drove to Husband's family's farm in Massachusetts where they worked unpaid, and eventually moved to Hawai'i where they jointly purchased property. In addition to working at Husband's family's store, Wife also helped with the construction of a house purchased in 1978 and traveled to Thailand with Husband to research orchids for a prospective business. Therefore, as the ICA stated, "[t]he family court considered the parties' joint financial acts, cohabitation since 1976, economic and non-economic contributions, and other financial arrangements in finding that the parties formed a premarital economic partnership in 1976[.]" Accordingly, the ICA correctly concluded that substantial evidence of the parties' pre-marital, non-marijuana operations sufficiently supported the premarital economic partnership finding. See Fisher, 111 Hawai'i at 46, 137 P.3d at 360.

Thus, we hold that, under the circumstances of this case, the ICA erred in vacating the property division and alimony awards because the family court had not excluded possible proceeds from an illegal marijuana operation. Although the ICA erred in setting aside the family court's property division

award based on illegality, we affirm the vacating of these awards for the reasons provided below.

## B. Property Division

### 1. Overview of Hawaii's Property Division Framework

In Hawai'i, "[t]here is . . . no fixed rule for determining the amount of property to be awarded each spouse in a divorce action other than as set forth in HRS § 580-47." Gussin, 73 Haw. at 479, 836 P.2d at 489 (citation omitted). Under HRS § 580-47 (Supp. 2011),[8] the family court has wide discretion to divide Marital Partnership Property in a manner that is "just and equitable" under the facts and circumstances of each case. Tougas, 76 Hawai'i at 26, 868 P.2d 444. "In addition to HRS § 580-47, Hawai'i case law has created a framework based on partnership principles that provides further guidance for family courts to use in dividing property upon divorce." Kakinami, 127 Hawai'i at 137, 276 P.3d at 706. See also Tougas, 76 Hawai'i at 28, 868 P.2d at 446 ("The partnership model is the appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings."); Gussin, 73 Haw. at 471, 836 P.2d at 486 ("The partnership model of marriage provides the necessary guidance to

---

[8]    HRS § 580-47(a) provides, in relevant part, that upon granting a divorce, the family court "may make any further orders as shall appear just and equitable . . . finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate[.]"

the family court in exercising its discretion and for appellate review.").

Under the Marital Partnership Model, "[m]arriage is a partnership to which both parties bring their financial resources as well as their individual energies and efforts. In divorce proceedings regarding division and distribution of the parties' estate, partnership principles guide and limit the range of the family court's choices." Gussin, 73 Haw. at 470-71, 836 P.2d at 485-86. Moreover, "the family court shall consider 'the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, . . . and all other circumstances of the case.'" HRS § 580-47(a).

The Marital Partnership Model recognizes the following general classifications of property in a divorce proceeding:

> **Premarital Separate Property**. This was the property owned by each spouse immediately prior to their marriage or cohabitation that was concluded by their marriage. Upon marriage, this property became either Marital Separate Property or Marital Partnership Property.
>
> **Marital Separate Property**. This is the following property owned by one or both of the spouses at the time of the divorce:
>
> > a. All property that was excluded from the marital partnership by an agreement in conformity with the Hawai'i Uniform Premarital Agreement Act (HUPAA), HRS chapter 572D (Supp. 1992)[;]
> >
> > . . . .
> >
> > b. All property that was excluded from the marital partnership by a valid contract[;] and

> c. All property that (1) was acquired by the spouse-owner during the marriage by gift or inheritance, (2) was expressly classified by the donee/heir-spouse-owner as his or her separate property, and (3) after acquisition, was maintained by itself and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.
>
> **Marital Partnership Property**. All property that is not Marital Separate Property.

Hussey, 77 Hawai'i at 206-07, 881 P.2d at 1274-75 (internal citations omitted), overruled on other grounds by State v. Gonsales, 91 Hawai'i 446, 984 P.2d 1272 (App. 1999). "Upon marriage, Premarital Separate Property becomes either Marital Separate Property or Marital Partnership Property." Kakinami, 127 Hawai'i at 131, 276 P.3d at 700 (citing Hussey, 77 Hawai'i at 206, 881 P.2d at 1274).

With respect to Marital Partnership Property, this court has established five categories of net market values ("NMVs") as guidance in divorce cases:

> Category 1. The net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT [date of the conclusion of the evidentiary part of the trial]
>
> Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is

> included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.
>
> Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

Tougas, 76 Hawai'i at 27, 868 P.2d at 445 (citation omitted).

The significance of these category classifications is as follows:

> the NMVs in Categories 1 and 3 are the parties' "capital contributions," and pursuant to general partnership law, they are returned to each spouse. Categories 2 and 4 are the "during-the marriage increase in NMVs of the Categories 1 and 3 Properties owned at DOCOEPOT[,]" which similar to partnership profits, are generally to be shared equally. In sum, this court stated, "if there is no agreement between the husband and wife defining the respective property interests, partnership principles dictate an equal division of the marital estate where the only facts proved are the marriage itself and the existence of jointly owned property."

Kakinami, 127 Hawai'i at 138, 276 P.3d at 707 (internal citations omitted) (quoting Tougas, 76 Hawai'i at 27-28, 868 P.2d at 445-46).

We recently reaffirmed the manner in which the family court is to address the division of property, as follows:

> The partnership model requires the family court to first find all of the facts necessary for categorization of the properties and assignment of the relevant net market values. Second, the court must identify any equitable considerations justifying deviation from an equal distribution. Third, the court must "decide whether or not there will be a deviation," and in its fourth step, the court decides the extent of any deviation.

Gordon, 135 Hawai'i at 350, 350 P.3d at 1018 (internal citations omitted) (citing Jackson, 84 Hawai'i at 332, 933 P.2d at 1367).

"Each partner's individual contributions to the marriage, i.e.,

the values of Category 1 and Category 3, are to be repaid to the contributing spouse absent equitable considerations justifying a deviation."  135 Hawai'i at 349, 350 P.3d at 1017 (footnote omitted).

We address the parties' arguments in light of these guiding principles.

### 2.  Categorization and Assignment of Values

As stated above, "[t]he partnership model requires the family court to first find all of the facts necessary for categorization of the properties and assignment of the relevant net market values."  Gordon, 135 Hawai'i at 350, 350 P.3d at 1018 (internal citations omitted).

### a.  Funds Remaining in Husband's Account

Wife alleges that the family court erred in characterizing the $2,051,293 remaining in Husband's inheritance account as Marital Separate Property, instead of characterizing it as Marital Partnership Property subject to division in this divorce.  In Kakinami, this court clarified the distinction between Marital Separate Property and "separately owned" Marital Partnership Property,[9] and addressed the issue of whether Marital

---

[9]    "Separately owned" Marital Partnership Property is Category 1 or 3 Marital Partnership Property that may be titled in the name of one spouse. As Marital Partnership Property, such property is subject to division in a divorce proceeding.  See Myers v. Myers, 70 Haw. 143, 144, 764 P.2d 1237, 1238 (1988) (quoting Kastely, An Essay in Family Law:  Property Division, Alimony, Child Support, and Child Custody, 6 U. Haw. L. Rev. 318, 393 (1984).

Separate Property can be awarded to the non-owner spouse in divorce.  A majority of this court held that Marital Separate Property is a narrow category of separate property "that has been excluded from the marital partnership, and thus, not subject to division."  127 Hawai'i at 142, 276 P.3d at 711.  See also 127 Hawai'i at 141 n.9, 276 P.3d at 710 n.9 ("Marital Separate Property is a narrow category of 'separate property' that, in our view, provides a practical means of segregating certain property from the marital estate, the segregation of which can influence the equitable distribution of the parties' other assets.").  Although Marital Separate Property is not subject to division, if marital assets are used to maintain a gift or inheritance, then the gift or inheritance is subject to division as Marital Partnership Property:

> if a party receives a gift or inheritance during the marriage, but the party does not expressly classify that gift or inheritance as separate property, or uses marital assets or efforts to maintain that gift or inheritance, then the gift or inheritance would be subject to division as Marital Partnership Property.

Kakinami, 127 Hawai'i at 141, 276 P.3d at 710.

In this case, Husband placed his inheritance funds in a separate account, and labelled it as such.  The family court ruled that the $2,051,293 remaining in Husband's "separate" inheritance account was Marital Separate Property because the account had been created solely for the purpose of holding and maintaining his inheritance, no funds from any other source were

deposited into the account, and the account was maintained by itself and funded only by interest earned.  If, as stated above, however, "marital assets" were used to maintain the inheritance, then the inheritance is subject to division as Marital Partnership Property.

At trial, Wife's forensic accounting expert testified pursuant to his report that a total of $463,455 had been paid for Husband's inheritance taxes.  He referenced his report, which included the itemized listing in Husband's answers to interrogatory number 9.  The inheritance taxes were included in the amounts that the family court had ruled, before and after trial, were "Category 3 assets [used] for marital purposes for which Husband is entitled to be repaid."

Thus, those alleged "Category 3" disbursements included the $463,455 paid by Husband as inheritance taxes for his entire inheritance.  The entire $2,051,293 remaining in that inheritance was nonetheless characterized by the family court as "Marital Separate Property."  Pursuant to Kakinami, however, if a party uses marital assets to maintain an inheritance, the inheritance is no longer Marital Separate Property, but becomes subject to division as Marital Partnership Property.  Thus, if the $463,455 in inheritance taxes for the entire inheritance came out of Category 3 Marital Partnership Property for which Husband was entitled to be repaid, as ruled by the family court,

then Marital Partnership Property was used to maintain the "separate" inheritance account, disqualifying the remaining funds from being characterized as Marital Separate Property.

In order for the $2,051.293 remaining in Husband's inheritance account to be his Marital Separate Property, as ruled by the family court, the $463,455 paid as inheritance taxes had to be excluded from Category 3 Marital Partnership Property. Thus, we hold that the family court erred, either by characterizing the entire $1,511,477 expended from Husband's inheritance account as Category 3 Marital Partnership Property or by characterizing the $2,051,293 remaining in the account as Marital Separate Property. To reiterate, if inheritance taxes are paid out of Marital Partnership Property, the inheritance cannot be classified as Marital Separate Property.

We therefore vacate the property division award. The family court must, on remand, address this inconsistency in its decision.

### b.   Funds Expended from Husband's account

There are additional issues that must be addressed on remand with respect to the $1,511,447 expended from Husband's account, which the family court characterized in its entirety as Category 3 Marital Partnership Property.

Under the Marital Partnership Model, each partner is entitled to be repaid his or her contributions to partnership

37

property, whether made by way of capital or advances. Tougas, 76 Hawaiʻi at 27, 868 P.2d at 445. Under partnership principles, Husband has the burden of proving that he contributed property to the marital partnership and of establishing the property's value at the time of contribution. See Mark IV Pictures, Inc. v. C.I.R., 969 F.2d 669, 672 (8th Cir. 1992) ("The [partner] bears the burden of proving that he contributed property to the partnership and of establishing the property's value at the time of contribution."). According to Epp v. Epp, 80 Hawaiʻi 79, 905 P.2d 54 (App. 1995), "[u]nder the Partnership Model, a spouse's Category 1 and 3 NMVs are that spouse's 'partner's contributions' to the Marital Partnership Property that, assuming all relevant and valid considerations are equal, are repaid to the contributing spouse-partner . . . ." 80 Hawaiʻi at 82, 905 P.2d at 57. In addition, pursuant to Wong v. Wong, 87 Hawaiʻi 475, 960 P.2d 145 (App. 1998), "a [marital] partner who invests money into partnership accounts and/or real and/or personal property into the partnership name or the names of the partners does not thereby gift the invested money and/or real and/or personal property to his/her partners." 87 Hawaiʻi at 482, 960 P.2d at 152 (emphasis added).

Therefore, as a threshold issue, in order to be categorized as Category 3 Marital Partnership Property, Marital Separate Property must be expended as a contribution to or an investment

38

in Marital Partnership Property.  This would include expenditures for down payments, improvements, or toward the principal of loans related to Marital Partnership Property real estate, expenditures for Marital Partnership Property stock or business interests, or other advances or payments toward Marital Partnership real or personal property or Marital Partnership investments.  Accordingly, expenditures for things such as a spouse's or children's educations, meals, trips, socializing, entertainment, requirements for daily living, etc., do not qualify, unless they are in the nature of a contribution to or investment in Marital Partnership Property.

In this case, the family court summarily categorized all expenditures made by Husband from his Marital Separate Property account as Category 3 Marital Partnership Property for which he was entitled to be repaid upon divorce as a capital contribution.  This already improperly included the $463,455 paid as inheritance taxes, as noted in Section IV.B.2.a above. It also appears to have included expenditures for Wife and the children's trips, private school and university tuition and expenses, cars, extracurricular activities, restaurant meals, birthday and holiday presents, etc.  This does not comport with our case law, as explained above.  If such sums are automatically characterized as Category 3 Marital Partnership Property, a wealthy spouse could summarily be entitled to

reimbursement for half of all sums arguably expended on behalf of the spouse or children upon divorce. It would be highly unusual for a wealthy spouse to make expenditures during a marriage with a non-wealthy spouse for items not related to investment funds or assets while expecting to be repaid half of such expenditures upon divorce. It defies logic to allow a wealthy spouse to make substantial expenditures that a non-wealthy spouse would never choose to make, has no control over, and probably never envisioned having to repay, and then to order the non-wealthy spouse to reimburse the wealthy spouse for half of such expenditures at the time of divorce. Under our case law, expenditures made from a Marital Separate Property account qualify for characterization as Category 3 Marital Partnership Property only where they are in the nature of a contribution to or an investment in Marital Partnership Property.

Even if expenditures pass the threshold of being able to qualify as Category 3 Marital Partnership Property, the family court must still address the secondary issue of whether they were actually contributions or investments with an expectation of repayment upon divorce. In this regard, Category 3 Marital Partnership Property includes property separately acquired by gift or inheritance during the marriage, but excludes the net market value attributable to property "that is subsequently legally gifted by the owner to the other spouse, to both

40

spouses, or to a third party." Tougas, 76 Hawai'i at 27, 868 P.2d at 445 (emphasis added, citation omitted). To constitute a gift, there must be: (1) donative intent; (2) delivery; and (3) acceptance. 76 Hawai'i at 27, 31, 868 P.2d at 445, 449.

In this case, the family court first erroneously ruled that all of Husband's expenditures from the Marital Separate Property account qualified as Category 3 Marital Partnership Property without examining the expenditures to ascertain whether they were in the nature of contributions to or investments in Marital Partnership Property. The family court then also erred by ruling, before hearing evidence on donative intent, that Husband was entitled to be repaid the entire $1,511,447 expended from his inheritance account. Even though Wife briefly attempted to testify at trial that Husband had not expected to be paid back any of this money, the family court had already ruled before trial that none of these amounts were gifts, effectively precluding evidence and argument on either issue.

Thus, we hold that, under the circumstances of this case, the family court erred in ruling before trial that all funds expended by Husband from his Marital Separate Property constituted Category 3 Marital Partnership Property for which he was entitled to be repaid. Upon remand, the family court must also address the two issues discussed in this section.

41

### 3. Equitable Deviation

The family court followed an erroneous approach to equitable deviation. As stated above, the partnership model requires the family court to "identify any equitable considerations justifying deviation from an equal distribution" of the marital estate before deciding "whether or not there will be a deviation[.]" Gordon, 135 Hawai'i at 350, 350 P.3d at 1018 (internal citations omitted). If the family court decides equitable considerations justify deviation from an equal distribution, then it must "decide[] the extent of any deviation." Id.

In this case, the family court first ordered an equal distribution of alleged partnership losses, to the extent it ruled that Husband was entitled to an equalization payment from Wife of $549,873, before deciding whether equitable considerations justified deviation from such an equal distribution.

Whether equitable considerations exist to justify deviation must be determined, however, at the time the family court decides whether to credit one partner for all of his or her capital contributions, whether and how to distribute marital assets, and whether to award alimony. See Gordon, 135 Hawai'i at 349, 350 P.3d at 1017 ("Each partner's individual contributions to the marriage, i.e., the values of Category 1 and Category 3,

are to be repaid to the contributing spouse absent equitable considerations justifying a deviation."). In determining whether the circumstances justify deviation from the partnership model, the family court must consider the following: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case. 135 Hawai'i at 350, 350 P.3d at 1018. See also Tougas, 76 Hawai'i at 32, 868 P.2d at 450 ("The court may, nevertheless, alter alimony, child support and . . . the ultimate distribution of the marital estate based on the respective separate conditions of the spouses.").

In this case, the family court should have considered whether equitable considerations justifying deviation from an equal distribution of Marital Partnership Property existed before ordering a 100% credit of Husband's alleged Category 3 contributions. In this regard, Husband's arguments based on Wong, 87 Hawai'i 475, 960 P.2d 145, are unpersuasive. In that case, the family court did not award the husband the full value of his capital contribution. In Wong, a husband and wife jointly purchased two parcels of real property with $400,000 for down payments received from the husband's parents. Upon divorce, the family court ruled that the $400,000 was the

husband's Category 3 property. 87 Hawai'i at 480, 960 P.2d at 150. The family court recognized that "[i]f [the husband] were to be returned his capital contribution, not only would [the husband] be awarded all of the parties' assets but [the wife] would also need to reimburse [the husband] about $109,000, because [] the current net market value of the marital estate" had declined. Id.

This statement does not require the family court's deduction of capital contributions in excess of the marital estate, as Husband asserts. In ultimately dividing the marital estate, the family court in Wong awarded the husband three out of four jointly owned properties, one of which had a negative net market value. The value of real property awarded to each spouse totaled $96,454 to the husband and $81,000 to the wife. See id. In affirming the property division on appeal, the ICA noted that the husband left the marriage with less than his capital contribution, while the wife left with "much more" than her negative capital contribution. Id. Thus, contrary to Husband's assertion, Wong does not stand for the proposition that a complete return of capital contributions is always required. Rather, pursuant to the principles above, the family court must first decide whether equitable considerations justify deviation from such an equal distribution of marital assets.

Following the proper process could have significantly different results for property division. For example, in this case, the family court could have found equitable considerations justifying departure from an equal distribution of partnership property based on the fact that Wife had virtually no assets and would be left without a home in which to reside if an equal distribution was made, before ordering a 100% credit of Husband's alleged Category 3 contributions. The family court could then have decided the extent of the deviation with a view toward reaching a just and equitable result, as more fully discussed in Section IV.B.5 below. Instead, the family court ordered an equal distribution of the alleged partnership losses.

Therefore, we also hold that the family court erred in ordering an equal distribution of alleged partnership losses before deciding whether equitable considerations justified deviation from an equal distribution. On remand, the family court must first address whether any equitable considerations justifying deviation from an equal distribution exist, then address whether or not there will be a deviation, then decide the extent of any deviation.

### 4. Consideration of Husband's Inheritance to Deviate from the Marital Partnership Model

Husband argues that the ICA erred in affirming the family court's deviation from the Marital Partnership Model based on

his Marital Separate Property inheritance.  He requests a determination that the family court's reliance on his inheritance to justify a deviation was erroneous, or alternatively, that the property division be vacated and remanded with instructions to modify the equalization payment to eliminate any consideration of his inheritance.

In response, Wife argues that Husband unfairly received both 100% of his remaining Marital Separate Property inheritance and 100% of the Marital Partnership Property.  She contends that she would have received at least 50% of the approximately $450,000 marital assets if they had filed for divorce before Husband received the inheritance.

Although we have already set aside the family court's property division, we address these arguments to provide guidance on remand.  In Kakinami, we affirmed the ICA's ruling that "the mere existence of [] an inheritance does not, without more, mandate deviation from the Marital Partnership Model." 127 Hawaiʻi at 143, 276 P.3d at 712 (internal quotation marks and brackets omitted) (quoting Kakinami v. Kakinami, No. 29340 (App. May 11, 2011) (SDO)).  This court also stated, however, that "although Marital Separate Property cannot be awarded to the non-owner spouse [in divorce], it can influence the division of Marital Partnership Property."  127 Hawaiʻi at 142, 276 P.3d at 711 (emphasis added).  See also Hussey, 77 Hawaiʻi at 207, 881

46

P.2d at 1275 ("Although Marital Separate Property cannot be used by the family court to offset . . . the award of Marital Partnership Property to the other spouse, it can be used by the family court to alter the ultimate distribution of Marital Partnership Property based on the respective separate conditions of the spouses." (internal citations, quotation marks, ellipses, and brackets omitted)), overruled on other grounds by Gonsales, 91 Hawai'i 446, 984 P.2d 1272.

Moreover, in determining whether equitable considerations justify a deviation from the partnership model, the family court must consider the following:  "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case."  Gordon, 135 Hawai'i at 352-53, 350 P.3d at 1020-21 (citing HRS § 580-47(a)). "The family court's determination of whether facts present valid and relevant considerations authorizing a deviation from the partnership model division is a question of law that this court reviews under the right/wrong standard of appellate review." Gordon, 135 Hawai'i at 348, 350 P.3d at 1016 (citing Jackson, 84 Hawai'i at 332–33, 933 P.2d at 1366–67).

Here, the family court's findings in support of deviation reference Wife's "substantial" equalization payment to Husband,

Husband's "substantial" Marital Separate Property and capital contribution credits in excess of the marital estate, and the parties' thirty-four year economic partnership, ages, and employability. Thus, the deviation was not based on the mere existence of Husband's inheritance. 127 Hawaiʻi at 143, 276 P.3d at 712. Therefore, the family court did not err in considering the existence of Husband's Marital Separate Property inheritance to deviate from partnership principles.

### 5. A Property Division Award Must Be Just and Equitable

Under HRS § 580-47, the family court has wide discretion to divide Marital Partnership Property in a manner that is "just and equitable" under the facts and circumstances of each case. "In addition to HRS § 580–47, Hawaiʻi case law has created a framework based on partnership principles that provides further guidance for family courts to use in dividing property upon divorce." Kakinami, 127 Hawaiʻi at 137, 276 P.3d at 706; Gussin, 73 Haw. at 471, 836 P.2d at 486 ("The partnership model of marriage provides the necessary guidance to the family court in exercising its discretion and for appellate review.").

Under the Marital Partnership Model, "[m]arriage is a partnership to which both parties bring their financial resources as well as their individual energies and efforts. In divorce proceedings regarding division and distribution of the

parties' estate, partnership principles guide and limit the range of the family court's choices." Gussin, 73 Haw. at 470-71, 836 P.2d at 485-86. However, "the family court shall consider 'the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, . . . and all other circumstances of the case.'" HRS § 580-47(a). Importantly, the family court is empowered to make orders that are "just and equitable." Id. (emphasis added).

With respect to Wife's assertion that the family court erred in failing to divide and distribute Husband's inheritance in a just and equitable manner, she cites to Carson v. Carson, 50 Haw. 182, 436 P.2d 7 (1967), and Cassiday v. Cassiday, 68 Haw. 383, 716 P.2d 1133 (1986), in support of her contention that the family court can award separate property to the non-owning spouse. The separate property at issue in both cases was actually Marital Partnership Property, not Marital Separate Property that is now clearly governed by Kakinami. If on remand, the family court determines that Husband's remaining inheritance is actually Marital Partnership Property, then the inheritance will be subject to division. If not, pursuant to Kakinami, it will not.

49

Other principles in Carson and Cassiday, however, remain instructive.  In Carson, this court held that the family court must fully and properly consider all of the factors enumerated in Revised Laws of Hawai‘i (RLH) § 324-37 (1955), the precursor to HRS § 580-47, including the respective merits of the parties, the ability of the husband, the condition in which the parties will be left by the divorce, and all other circumstances of the case, and further, that "[u]ndue emphasis on a particular factor, [such as the source of the asset,] excluding the consideration of other factors, constitutes an abuse of discretion."  50 Haw. at 182, 436 P.2d at 8; accord 50 Haw. at 183, 436 P.2d at 9.  This court clarified that "all other circumstances of the case" encompass "all other matters which would have a bearing on the division and distribution of property."  50 Haw. at 187, 436 P.2d at 11.

In Cassiday, this court recognized that other unique factors beyond those set out in HRS § 580-47 may come into play, such as "the length of the marriage, the separate financial contribution of each party to the upkeep of those assets, and the involvement, direct or indirect, in the management and maintenance of them."  68 Haw. at 389, 716 P.2d at 1137.  In reversing the property division award, this court stated that the family court had failed to consider "the extent to which the marriage in and of itself affected the accumulation or

50

preservation of [the husband's] separate property."  68 Haw. at 387, 716 P.2d at 1137.

Cases such as Carson and Cassiday demonstrate the manner in which the family court, in its application of the partnership model, can unduly emphasize money or property brought into a marriage over other non-economic considerations, such as the contribution of services during the marriage, the value of which is not as readily quantifiable.  These cases demonstrate how one spouse's non-economic contributions to the marriage can affect the accumulation or preservation of the other spouse's separate holdings, whether Marital Separate Property or Marital Partnership Property, and that the family court must take those factors into consideration in fashioning a just and equitable distribution of Marital Partnership Property under the circumstances of the case.  "[M]arriage is a partnership to which both partners bring their financial resources as well as their individual energies and efforts."  Collins, 133 Hawai'i at 43, 323 P.3d at 1225 (quotation marks and citations omitted).  "That one partner brings to the marriage substantially greater assets than the other does not make this any less the case."  Cassiday, 68 Haw. at 387, 716 P.2d at 1136.

In this case, the family court's property division award, awarded Wife, who has few employment prospects after a thirty-four year partnership, $1,396 in bank accounts, a retirement

account worth $13,000, and a used Suzuki valued at $13,000, while awarding Husband, who had $2,051,293 in his bank account, the marital residence with equity of $243,781, an office cottage valued at $95,000, a $32,875 Camaro, a $1,000 Jeep, $57,835 in liquid cash accounts, and an IRA account valued at $8,645. This simply does not meet a "just and equitable" standard. For this reason, also, the property division award would have been set aside for abuse of discretion, even if we had not already ordered it set aside for the reasons above.

### C. Temporary Spousal Support

#### 1. During the Pendency of Divorce Proceedings

Turning to other issues on certiorari, Husband argues that the ICA erred in affirming the family court's award of temporary support to Wife during the pendency of the divorce proceedings because Wife was "effectively awarded [Husband's] inheritance" despite its subsequent classification as Marital Separate Property. He further argues that the ICA and family court failed to consider that Wife's gross monthly income was greater. In response, Wife contends that Husband's argument lacks merit because he was ultimately credited with these payments when the family court treated his spent inheritance funds as his Category 3 property and deducted it from the marital estate.

The family court is authorized to order temporary support under HRS § 580-9 (2006), which provides, in relevant part:

> After the filing of a complaint for divorce or separation the court may make such orders relative to the personal liberty and support of either spouse pending the complaint as the court may deem fair and reasonable and may enforce the orders by summary process.

"An award for temporary support is a sum necessary for the maintenance of a party pending litigation." Farias v. Farias, 58 Haw. 227, 233, 566 P.2d 1104, 1109 (1977). "If one party has insufficient income but the other party has sufficient income for both, then neither's capital should be impaired [while the action is pending] absent special circumstances." Horst v. Horst, 1 Haw. App. 617, 622, 623 P.2d 1265, 1269 (1981). See also Richards v. Richards, 44 Haw. 491, 497, 355 P.2d at 193 (1960) (affirming an award of temporary alimony where wife had insufficient income to maintain her standard of living without impairing the capital of her separate estate). As the ICA stated, "'financial resources of the husband' are given 'due consideration' in awarding the spouse temporary support." Hamilton, mem. op. at 18 (quoting Richards, 44 Haw. at 497, 355 P.2d at 193, superseded on other grounds in Epp, 80 Hawaiʻi at 91, 905 P.2d at 66). Moreover, Marital Separate Property may factor into the family court's decision to "alter alimony . . . based on the respective separate conditions of the spouses." Tougas, 76 Hawaiʻi at 32, 868 P.2d at 450, overruled on other grounds by Gonsales, 91 Hawaiʻi 446, 984 P.2d 1272.

In this case, neither spouse had sufficient income to maintain each's respective standard of living. Wife received approximately $1,380 per month as a nanny. Comparatively, Husband reported a lower gross monthly income of $1,000; however, Husband held significantly greater assets. Therefore, the temporary spousal support award appears to have been "fair and reasonable" in light of Husband's significant financial resources, which were sufficient to cover expenses for both himself and Wife during the divorce. Moreover, the family court's finding in support of the pre-divorce temporary spousal support award refers to Wife's Income & Expense statement and the parties' previous use of Husband's inheritance funds for marital expenses. Thus, the family court properly considered the parties' respective incomes and Husband's large assets as compared to Wife's in requiring Husband to pay temporary alimony for the purpose of Wife's maintenance pending litigation. See HRS § 580-9. Accordingly, the ICA did not err in ruling that "[t]here was no abuse of discretion in the family court's consideration of [Husband's] financial resources in ordering temporary spousal support for [Wife]." Hamilton, mem. op. at 18.

##    2.    Failure to Award Permanent Spousal Support

The family court ordered Husband to pay spousal support of $2,000 per month until Wife moved out of the marital residence

54

then $3,000 per month thereafter until December 2016.  Wife argues that the family court erred in failing to consider altering the amount or duration of post-divorce temporary spousal support to compensate her for the "grossly unequal property division caused by [Husband's] inheritance."  Comparing the award of spousal support during the divorce proceedings to the post-divorce award, Wife contends that an increase of $1000 per month was "obviously inadequate" to cover her expenses where pre-divorce spousal support also included housing and medical expenses.

We have vacated the family court's property division award.  As the need for spousal support will be related to the property division, we hereby also vacate the spousal support award.  See Gordon, 135 Hawai'i at 355, 350 P.3d at 1023.  On remand, the family court is to decide spousal support in light of the following considerations.

HRS § 580-47(a) requires the family court to consider the following criteria when making further orders for the support and maintenance of either spouse:  "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, . . . and all other circumstances of the case."  The

family court must also consider all of the following factors in ordering spousal support and maintenance:

> (1)  Financial resources of the parties;
>
> (2)  Ability of the party seeking support and maintenance to meet his or her needs independently;
>
> (3)  Duration of the marriage;
>
> (4)  Standard of living established during the marriage;
>
> (5)  Age of the parties;
>
> (6)  Physical and emotional condition of the parties;
>
> (7)  Usual occupation of the parties during the marriage;
>
> (8)  Vocational skills and employability of the party seeking support and maintenance;
>
> (9)  Needs of the parties;
>
> (10)  Custodial and child support responsibilities;
>
> (11)  Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance;
>
> (12)  Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made; and
>
> (13)  Probable duration of the need of the party seeking support and maintenance.

HRS § 580-47(a).  See Cassiday, 6 Haw. App. at 215, 716 P.2d at 1151 ("When deciding in a divorce case whether one party must pay periodic support to the other, for how long, and how much, the family court must consider all of the factors enumerated in HRS § 580-47(a)[.]"), aff'd in part, rev'd in part, 68 Haw. 383, 716 P.2d 1133 (1986).

D.   Attorneys' Fees

Over the course of the entire divorce proceeding, Wife received from Husband $60,450 out of $86,126.17 in attorney's fees and costs. Wife's counsel declared that the amount requested did not include attorney's fees incurred after preparation of the closing argument and reply, which were still accumulating.

Husband argues that the attorneys' fees and costs award to Wife constituted an abuse of discretion because he had insufficient income and the award "invaded" his inheritance, which he contends should have been "taken out of the equation" as Marital Separate Property. Wife contends that Husband's argument lacks merit because he was ultimately credited with these payments when the family court treated his spent inheritance as a Category 3 asset and deducted it from the marital estate.

This court has explained that "an award of attorney's fees is in the sound discretion of the trial court, limited only by the standard that it be fair and reasonable." Farias, 58 Haw. at 233, 566 P.2d at 1109 (citing Carson, 50 Haw. at 188, 436 P.2d at 11; Richards, 44 Haw. at 496, 355 P.2d at 192). With respect to attorney's fees and costs advanced to Wife during the pendency of the divorce, HRS § 580-9 (2006) provides, in relevant part:

> The court may also compel either spouse to advance
> reasonable amounts for the compensation of witnesses and
> other expenses of the trial, including attorney's fees, to
> be incurred by the other spouse and may from time to time
> amend and revise the orders.

We have further stated:

> In determining the fair and reasonable amount of attorney's
> fees, the trial court should consider the financial ability
> of the parties and the amount necessary for the efficient
> prosecution or defense of the action. The latter depends
> on the character of the litigation, services to be
> performed, and all other circumstances which may tend to
> lessen or increase the probable expenses of the litigation.

58 Haw. at 233, 566 P.2d at 1109 (citations omitted).

In this case, the family court's award of attorney's fees

and costs appears to be fair and reasonable under the

circumstances. Wife's trial expenses were increased by

Husband's filing of five motions for partial summary judgment,

which required extensive expert review of voluminous financial

documents; a motion for reconsideration of an order granting and

denying in part a motion to compel; and a motion in limine.

Considering the parties' financial abilities, discussed above,

the family court did not abuse its discretion in requiring

Husband to advance amounts totaling $55,450 for trial expenses.

Regarding attorney's fees awarded after divorce, HRS § 580-

47(f) provides, in relevant part:

> (f) Attorney's fees and costs. The court hearing
> any motion for orders either revising an order for the
> custody, support, maintenance, and education of the
> children of the parties, or an order for the support and
> maintenance of one party by the other, or a motion for an
> order to enforce any such order or any order made under
> subsection (a) of this section, may make such orders
> requiring either party to pay or contribute to the payment
> of the attorney's fees, costs, and expenses of the other

> party relating to such motion and hearing as shall appear
> just and equitable after consideration of the respective
> merits of the parties, the relative abilities of the
> parties, the economic condition of each party at the time
> of the hearing, the burdens imposed upon either party for
> the benefit of the children of the parties, the concealment
> of or failure to disclose income or an asset, or violation
> of a restraining order issued under section 580-10(a) or
> (b), if any, by either party, and all other circumstances
> of the case.

Here, the family court concluded that Husband's "superior financial condition" justified requiring him to pay Wife's attorney's fees. This finding is supported by the parties' Asset and Debt statements, which show Husband as having significantly greater assets than Wife. As stated supra, Husband's individually held assets totaled more than $2 million, while Wife's individually held assets totaled approximately $19,000. Therefore, the evidence shows the family court properly considered the factors in HRS § 580-47(f), in particular the parties' relative abilities and post-divorce economic conditions. Given the family court's broad discretion, its award of attorney's fees to Wife did not amount to an abuse of discretion. Accordingly, the ICA did not err in affirming the attorney's fees and costs award to Wife.

**V. Conclusion**

For the foregoing reasons, we affirm in part and vacate in part the ICA's September 25, 2014 Judgment on Appeal, filed pursuant to its August 29, 2014 Memorandum Opinion, which affirmed in part, vacated in part, and remanded the family

59

court's June 7, 2013 Divorce Decree.  We remand this case to the

family court for further proceedings consistent with this

opinion.

Peter Van Name Esser and                    /s/ Mark E. Recktenwald
Michael S. Zola
for petitioner/cross-appellee               /s/ Paula A. Nakayama

Rebecca A. Copeland                         /s/ Sabrina S. McKenna
for petitioner/cross-appellant



                                            /s/ Richard W. Pollack

                                            /s/ Michael D. Wilson