**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000038**
**31-JAN-2025**
**08:03 AM**
**Dkt. 114 MO**

NOS. CAAP-20-0000038 and CAAP-21-0000107


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


WILLIAM S. PERREIRA, Plaintiff-Appellant,
v.
GERTRUDE B. PERREIRA n.k.a. GERTRUDE B. HAIA,
Defendant-Appellee


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CASE NO.  FC-D 88-279)


MEMORANDUM OPINION
(By:  Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

        This consolidated appeal arises out of a marital property division dispute between Plaintiff-Appellant William S. Perreira (**William**), and his former spouse, Defendant-Appellee

Gertrude B. Perreira n.k.a. Gertrude B. Haia (**Barbara**),[1] regarding Barbara's share of William's Employees' Retirement System (**ERS**) benefits, following their 1989 divorce. After William's 2007 retirement, Barbara filed a 2008 motion to enforce a 1990 court order that awarded Barbara her share of the ERS benefits with payment commencing on William's 1999 retirement eligibility date, claiming Barbara had received no payment. The parties then fought over Barbara's share of the benefits for the next thirteen years, and in 2019, the family court finally determined the amount of Barbara's property division award, in response to Barbara's 2017 motion to enforce. Payments from the ERS for Barbara's award commenced in 2021.

The appeal in CAAP-20-0000038 (**2020 Appeal**) arises out of the family court's 2019 orders that affirmed a 2012 family court ruling that Barbara was entitled to 31% of the "lump sum present value" of William's ERS benefits; prescribed the date upon which the benefits would be valued; ordered Barbara to obtain an actuarial calculation of her awarded share; awarded attorney's fees; and finally determined the amount of Barbara's property division award as $772,990.10.

The appeal in CAAP-21-0000107 (**2021 Appeal**) arises out of the family court's subsequent 2021 order directing the ERS to begin monthly payments of $5,246.85 per month toward Barbara's property division award, which represented William's total monthly ERS distribution.

---

[1] The family court's March 5, 2019 "Findings of Fact, Conclusions of Law Re [Barbara]'s Motion to Enforce the Order Granting [Barbara]'s Motion and Affidavit for Order to Show Cause and Relief after Order or Decree Filed on August 7, 2008, Filed on March 14, 2012, Filed 10/17/2017" (**2019 DeWeese FOFs/COLs/Order Granting Relief**) refers to the parties by their first names, references that we also employ here for clarity. The Honorable Wendy M. DeWeese (**Judge DeWeese**) presided over the proceedings related to the 2019 orders at issue on appeal.

We affirm in the 2020 Appeal, and reverse in the 2021 Appeal.

## I.   BACKGROUND[2]

**2020 Appeal**

William appeals from thirteen orders issued from 2009 to 2019 by four different family court judges.[3]  The 2019 DeWeese FOFs/COLs/Order Granting Relief is a comprehensive order that incorporates all the court orders prior to its issuance that William challenges on appeal, and all of William's points of error (**POEs**) specifically challenge this order.  Because the 2019 DeWeese FOFs/COLs/Order Granting Relief constitutes the law of the case, we streamline our review by addressing William's challenges to this order, and we also address challenges to orders subsequent to the 2019 DeWeese FOFs/COLs/Order Granting Relief as necessary.

William's seven POEs[4] challenge the 2019 DeWeese FOFs/COLS/Order Granting Relief on grounds that:  **(1)** the

---

[2]    William's Statement of the Case in the Opening Briefs for both the 2020 Appeal and the 2021 Appeal are difficult to follow due to their argumentative tone and inconsistent provision of record references.  The identical footnote 1 in the Statement of the Case of both Opening Briefs refers this court to review William's 133-page 2019 "Final Argument" for a "history of the litigation . . . set out in detail" appended to the brief. We decline to do so.  It is the duty of the appellant's counsel to provide a "concise statement of the case" under Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(3).  (Emphasis added.)  William's counsel's noncompliance with HRAP Rule 28 impedes expeditious appellate review.  See HRAP Rule 28(a) (imposing a maximum 35-page limit for opening briefs) and 28(b)(3) (requiring presentation of material facts "in summary fashion, with appropriate record references").

[3]    The thirteen orders include a January 6, 2009 order entered by the Honorable Anthony K. Batholomew (**Judge Bartholomew**); a March 14, 2012 order, April 3, 2012 order, April 2, 2013 order, two November 21, 2014 orders, and an April 9, 2015 order, all entered by the Honorable Lloyd Van De Car (**Judge Van De Car**); an April 30, 2018 order and May 3, 2018 order entered by the Honorable Peter Bresciani (**Judge Bresciani**); and four 2019 orders entered by Judge DeWeese.

[4]    William's POEs do not comply with HRAP Rule 28(b)(4)(iii) (requiring "[e]ach point" to state "where in the record the alleged error was

3

statute of limitations to enforce the 1989 Divorce Decree expired under Hawaii Revised Statutes (**HRS**) § 657-5; **(2)** the family court "lost jurisdiction over the property division aspect of the divorce after one year"; **(3)** the family court erroneously "disregarded the evidence placed in the record as to the value of the police retirement at trial and the ruling of Judge [Shunichi] Kimura" (**Judge Kimura**); **(4)** the family court erroneously "disregarded the rulings of Judge Kimura by employing a monthly payment amount to value [Barbara]'s share of the retirement"; **(5)** "ordering interest on the property award of Judge Kimura" was erroneous and an abuse of discretion; **(6)** "ordering fees and costs" was "erroneous" and "constituted an abuse of discretion particularly when there were no specific findings based on evidence as to what was fair, reasonable and necessary"; and **(7)** the family court's admission of and reliance

---

objected to or the manner in which the alleged error was brought to the attention of the court"). The identification of how the required 28(b)(4)(iii) preservation was made must be contained in "[e]ach point," not in a combined one-paragraph summary for all seven points. The thirteen dockets cited in this one-paragraph summary contain no page numbers, in violation of HRAP Rule 28(b)(3) (requiring record references to cite to both the "docket number and electronic page citations"), and these dockets range from eight pages to over a hundred pages. We are not obligated to search these thirteen documents to ascertain how William preserved each of his seven POEs within them, and discern which document(s) corresponds to which point. See Haw. Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 480, 164 P.3d 696, 738 (2007) (explaining that an appellate court "is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions" (cleaned up)). While made difficult by William's counsel's noncompliance, William's Rule 28(b)(4)(iii) preservation is discernible for most of the POEs from the content of the orders appealed from, many of which repeat the same rulings in response to William's serially repetitive arguments before the different successive judges presiding over this lengthy litigation.

The POEs challenge FOF 15, but do not present specific argument why FOF 15 is clearly erroneous, and this challenge is waived. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

upon Barbara's 2019 actuarial calculation expert report without a new trial, violated William's due process rights as follows:

> [B]y giving [Barbara] unfair advantage by directing her to hire, post trial, a valuation expert and specifying how the court wanted the report to be prepared by the expert; and by admitting the new report into evidence when issuing her rulings on post trial motions when the report never been [sic] offered in evidence, the so-called expert had not been qualified and after the trial record had closed and after the court refused to reopen the case or grant a new trial.

(Capitalization altered.)

The following history for the 2020 Appeal is from the unchallenged findings and procedural history set forth in the 2019 DeWeese FOFs/COLs/Order Granting Relief and the record.

On August 14, 1989, the family court issued the Divorce Decree, reserving the division of the marital estate.

On November 13, 1990, Judge Kimura entered the "Order Dividing Retirement Benefits of [William]" (**1990 Kimura Order Dividing Benefits**), awarding Barbara her share of William's ERS retirement benefits as follows:

> 1.    [Barbara] be entitled to that percentage of [William]'s retirement benefits payable through his employment with the Hawaii County Police Department as determined by application of the following formula:
>
> (Number of years parties were married while [William] was accruing retirement benefits) / 25 (years [William] accrued benefits before retirement)    X ½ = [Barbara]'s share of [William's] retirement benefits
>
> 2.    Payment of said benefits shall be computed and shall commence as of the earliest date when [William] shall be qualified to retire.  That earliest date shall be when [William] has twenty-five (25) years of working service credited to his plan, inclusive of any service years he may elect to buy back from his plan.

(Emphasis added.)  When the 1990 order was entered, William was still employed with the Hawaiʻi County Police Department (**HIPD**),

which he had joined in 1974. This order thus required Barbara to wait to receive her share of the ERS asset until William had 25 years of service credit and reached retirement eligibility.

On October 22, 1992, Judge Kimura issued an "Order on Motion for Relief from Decree or Order" (**1992 Kimura Order Denying Relief**), which stated that the 1990 Kimura Order Dividing Benefits "does award [Barbara] with the proportionate share of [William]'s [ERS] property[,]" which William "must implement when he receives any ERS payments[.]" The 2019 DeWeese FOFs/COLs/Order Granting Relief found that this 1992 Kimura Order Denying Relief was "inconsistent" with the 1990 Kimura Order Dividing Benefits because the earlier order "required payments to Barbara to commence when William is 'qualified to retire,' not when he actually retires." When this second order by Judge Kimura was filed in 1992, William was no longer working at HIPD, and had begun employment with the Hawai'i County Prosecutor's Office (**Prosecutor's Office**).

On April 1, 1999,[5] William reached 25 years of working service and was eligible to retire, but he did not retire and continued working. Pursuant to the 1990 Kimura Order Dividing Benefits requiring that Barbara's payment "shall be computed and shall commence" when William reached 25 years of working service, it appears that Barbara's payment should have been computed and commenced on April 1, 1999. This did not happen, and Barbara received no payment.

On March 1, 2007, William retired from the Prosecutor's Office, where he had worked from 1992 to 2007, and began receiving ERS payments in 2007. Pursuant to the 1992

---

[5]     The 2019 DeWeese FOFs/COLs/Order Granting Relief corrected William's retirement eligibility date upon 25 years of working service as April 1, 1999. Previous court orders, some of which are mentioned infra, utilized an erroneous retirement eligibility date of February 18, 1999.

Kimura Order Denying Relief requiring that William and his representatives "must implement" the 1990 Kimura Order Dividing Benefits "**when** he receives any ERS payments" (emphasis added), it appears that Barbara's payment should have been implemented when William began receiving his ERS payments in 2007. This did not happen, and Barbara received no payment.

On August 7, 2008, because Barbara had not received any payment for her share of William's ERS benefits, Barbara filed a motion to enforce (**2008 motion to enforce**) the 1990 Kimura Order Dividing Benefits, seeking an accounting of William's benefits; an order for William to pay her share of the benefits; and attorney's fees and costs. William opposed the motion, arguing, among other things, that the ten-year statute of limitations under HRS § 657-5 on Barbara's claim had run.

On March 14, 2012, following multiple hearings between 2008 to 2012, Judge Van De Car entered the "Order Granting [Barbara]'s Motion and Affidavit for Order to Show Cause and Relief After Order or Decree Filed on August 7, 2008" (**2012 Van De Car Order Granting Relief**), resolving Barbara's 2008 motion to enforce by reaffirming[6] that the ten-year statute of limitations did not bar Barbara's claim for relief; rejecting both William's and Barbara's suggested approaches to divide William's retirement benefit because "[n]either approach results in [Barbara] receiving what this Court awarded her" in the 1990 Kimura Order Dividing Benefits; and determining the percentage of Barbara's share of William's benefits as of the 25-year retirement eligibility date. This order explained that "[t]he value of [William]'s retirement on February 18, 1999 [sic] has

---

[6] The family court had previously rejected William's statute of limitations argument in a January 6, 2009 order by Judge Bartholomew.

never been determined, but that does not mean it cannot be determined now," and ordered the following:

> 2. [Barbara] is awarded 31%[7] of [William]'s retirement valued on February 18, 1999 [sic];
>
> 3. In the event the parties cannot agree upon that value, the Court will schedule a hearing, take evidence, and determine the value;
>
> 4. [Barbara] is awarded interest on her share of [William]'s retirement at the statutory rate of 10% per annum, calculated from February 18, 1999 [sic];
>
> 5. [Barbara] is awarded her fees and costs for this motion;
>
> 6. [William] is entitled to set off the sum of $7,924.00 against this award, based upon [Barbara]'s admission that she owed child support arrears. [William] has not established the date on which this debt accrued, so no interest is awarded here.

(Footnote added.)

From 2013 to 2016, the family court presided over multiple motions and hearings regarding Barbara's efforts to obtain William's retirement information from ERS.

On October 17, 2017, Barbara filed a motion to enforce (**2017 motion to enforce**) her award under the 2012 Van De Car Order Granting Relief, for a determination of the value of William's retirement based on Judge Van De Car's 31% formula and

---

7       Barbara's Answering Brief explains the calculation of the 31% award as follows, and William does not specifically contest the calculation itself in his Reply Brief. (The Reply Brief only responds that "Judge Van De Car ordered 31% and did not state any valuation or source of contributions[,]" and "disregarded Malama's valuation.") Barbara explains that using the formula from the 1990 Kimura Order Dividing Benefits, the numerator (i.e. "[n]umber of years parties were married while [William] was accruing retirement benefits") was 15.25, which was the sum of the parties' nineteen years and three months of marriage (19.25) minus William's purchase of four years and one month of "previous membership service credit during December 17, 1969 to February 9, 1974[,]" i.e. 19.25 − 4 = 15.25. The denominator (i.e. "25 (years [William] accrued benefits before retirement)") was 25. After that fraction (15.25 divided by 25) was calculated, the formula called for the total, 0.61, to be multiplied by 0.5, which equaled 0.305, or rounded up, 31%.

the February 18, 1999 [sic] date indicated in that order.  Judge DeWeese presided over the resolution of this motion which included two evidentiary hearings on November 30, 2018, and December 21, 2018, during which evidence and testimony from an ERS representative, a pension administrator, Barbara, and William were presented.

On March 5, 2019, Judge DeWeese entered the 2019 DeWeese FOFs/COLs/Order Granting Relief resolving Barbara's 2017 motion to enforce, summarizing the dispute before the court as follows:  "At the heart of the dispute lies the interpretation of two prior court orders dividing William's retirement benefits:  one issued almost 30 years ago on November 13, 1990 by Judge S[h]unichi Kimura" and "one issued March 14, 2012 by Judge Lloyd Van De Car."  Judge DeWeese determined, inter alia, that the date upon which "William was eligible to retire with 25 years of service credit was April 1, 1999" and "not February 18, 1999"; that April 1, 1999 "was the earliest date" upon which the 1990 Kimura Order Dividing Benefits became enforceable and the cause of action for Barbara accrued; that Barbara's August 7, 2008 motion to enforce the 1990 Kimura Order Dividing Benefits was not time-barred; that the court was "bound by" the 2012 Van De Car Order Granting Relief; that "the interpretation and execution" of the 2012 Van De Car Order Granting Relief "thus controls the outcome of this case"; and ruled on the actuarial calculation of Barbara's share as follows:

> 2. Based on the language of [the 2012 Van De Car Order Granting Relief], [Barbara] is awarded 31% of the *present value* of [William]'s retirement with 25 years of service credit.  That value shall be determined as of the date when [William] had 25 years of service credit: **April 1, 1999.**  The monthly amount to which [William] was entitled with 25 years of service credit is **$2832.52.**  [Barbara] is awarded 31% of the lump sum present value of that monthly benefit sum calculated as of April 1, 1999 with the benefit commencement date of April 1, 1999.  This present value sum shall be calculated by an actuary.

Relevant to this appeal, this 2019 order also awarded ten percent per annum interest from April 1, 1999 "to be calculated once an actuary has determined the present value" of the lump sum; awarded attorney's fees and costs of $9,400.48 for the 2008 motion to enforce through 2012, consistent with the 2012 Van De Car Order Granting Relief; and awarded Barbara an additional sum of $10,000 "as a fair and reasonable sum" of attorneys' fees incurred since the 2012 Van De Car Order Granting Relief.

On December 26, 2019, following additional motions and hearings in 2019 regarding the actuarial calculation of Barbara's award, Judge DeWeese entered the "Order Granting [Barbara]'s Amended Motion for Relief After Judgment or Order, Filed November 14, 2019" (**2019 DeWeese Order Granting Post-Order Relief**), which received a 2019 lump sum actuarial calculation by Barbara's expert into evidence; and determined the total sum due to Barbara as her property division award, including interest and deducting a $7,294.00 offset, as $772,990.10.[8]  This order

---

[8]     The record lacks clarity as to the amount of Barbara's final judgment:  $772,990.10 or $792,390.58.  In the 2019 DeWeese Order Granting Post-Order Relief, the family court awarded Barbara $772,990.10, which was the result of subtracting an offset of $7,294.00 from $780,914.10, "the total sum due and payable to [Barbara] *as of 04/30/2019*, including the court ordered interest since 04/01/1999[.]"  In the same order, but in a separate paragraph, the family court ordered William to "comply with all existing prior court orders regarding his obligation to pay attorney's fees to [Barbara], including any court ordered interest."  The previous order, the 2019 DeWeese FOFs/COLs/Order Granting Relief, had granted two attorney's fees awards of $9,400.48 and $10,000.00.  Then, in the 2021 "Order Granting [Barbara]'s Motion for Approval and Entry of a Hawaii Domestic Relations Order" (**Order Granting HDRO**), the family court referred to "$792,390.58" as the "total due and owing to [Barbara] as of December 26, 2019."  While the record is not clear where this $792,390.58 calculation comes from, it appears this amount is a result of the $772,990.10 award plus the $19,400.48 ($9,400.48 + $10,000.00) in attorney's fees from the 2019 DeWeese FOFs/COLs/Order Granting Relief.  We note the parties themselves appear to disagree on whether the $772,990.10 is exclusive or inclusive of attorney's fees.

also stated:  "The Court notes that [William] was given an opportunity after the hearing on June 10, 2019 to challenge the methodology, provide his own calculation based on the Court's ruling, conduct further discovery, and cross examine the witness, all of which [William] declined."

On January 23, 2020, William timely filed the 2020 Appeal.

**2021 Appeal**

William appeals from the February 9, 2021 Order Granting HDRO.[9]  William raises seven POEs challenging the Order Granting HDRO, which we consolidate and restate for clarity,[10] as

---

Although not required in a post-judgment context, the family court should enter a final "judgment" based on the two 2019 orders by Judge DeWeese referenced above (collectively, **2019 DeWeese Orders**) that clearly states the total amount of Barbara's judgment, which appears to be $792,390.58, inclusive of her awarded share of William's ERS benefits, with court-ordered interest and attorney's fees.  Hall v. Hall, 96 Hawai'i 105, 111 n.4, 26 P.3d 594, 600 n.4 (App. 2001), affirmed in part, and vacated in part on other grounds, Hall v. Hall, 95 Hawai'i 318, 22 P.3d 965 (2001); Ditto v. McCurdy, 103 Hawai'i 153, 158, 80 P.3d 974, 979 (2003).  We remand solely for the entry of a final judgment to clarify the record.

[9]     The Honorable Mahilani E.K. Hiatt (**Judge Hiatt**) entered the Order Granting HDRO.

Although Perreira only appeals from the 2021 Order Granting HDRO, he also challenges the subsequently issued March 16, 2021 "Hawaii Domestic Relations Order for the Employees' Retirement System of the State of Hawaii" (**ERS HDRO**) and the March 16, 2021 order denying William's motion for reconsideration.  William presents no argument on the denial of reconsideration, and it is waived.  See HRAP Rule 28(b)(7).  William presents the same arguments for both the Order Granting HDRO and the ERS HDRO.  The ERS HDRO was also entered by Judge Hiatt.

[10]     We consolidate POEs 1, 2, 3, 5, and 7, which challenge the HDRO on various legal grounds.  POE 4 repeats the same lack-of-jurisdiction arguments we address in our disposition of the 2020 Appeal.  We address POE 6, which raises a different jurisdictional challenge.

William's POEs in the 2021 Appeal again fail to comply with HRAP Rule 28(b)(4)(iii) and do not identify how he preserved the errors alleged in each point.  See footnote supra regarding noncompliance in the brief for the 2020 Appeal.  William's Rule 28(b)(4)(iii) preservation is again presented in a combined one-paragraph summary for all seven points raised in the 2021 appeal.  The five dockets cited in this one-paragraph summary contain no page numbers, see HRAP Rule 28(b)(3), and the dockets range from three pages to

follows:  **(1)** the Order Granting HDRO was erroneous because a Hawai'i domestic relations order (**HDRO**) under HRS § 88-93.5 "is a statutory method to allow division of an ERS asset"; the HDRO "is not a collections mechanism for a money judgment"; ERS funds are immune from collection remedies such as garnishment and seizure; applying HRS § 88-93.5 to the Divorce Decree and subsequent property division orders is an "ex post facto" violation; and Barbara could not use an "HDRO" under HRS § 88-93.5 to seize William's benefits because she did not previously seek this remedy; and **(2)** the family court lacked jurisdiction "to alter or amend" the "lump award/judgment" in the 2019 DeWeese FOFs/COLs/Order Granting Relief by issuing a HDRO when the "Judgment" was on appeal.

On August 26, 2020, Barbara filed a "Motion for Approval and Entry of Hawaii Domestic Relations Order" (**Motion for HDRO**) requesting entry of an HDRO instructing the ERS to commence payments to Barbara in accordance with the family court's prior orders.

On February 9, 2021, the family court entered the Order Granting HDRO, noting that William "ha[d] not filed any *supersedeas* bond for the $792,390.58 total due and owing to [Barbara] as of December 26, 2019[,]"[11] and ruling that the Motion for HDRO did not seek to alter or amend prior orders; HRS § 88-93.5 applied prospectively and not retroactively; and Barbara was "entitled to [William]'s entire monthly retirement

---

101 pages.  While made difficult due to William's counsel's noncompliance, William's 28(b)(4)(iii) preservation is discernible from remaining portions of the brief and the language of the appealed orders.

[11]   As noted in a prior footnote, this amount is not reflected in the 2019 DeWeese Orders.  A final judgment clarifying the judgment amount should be entered on remand.

pension, which was last reported as $5,246.85, until the sums due pursuant to the 2019 Orders are satisfied in full."

On March 8, 2021, William timely appealed the Order Granting HDRO.

On March 16, 2021, the family court entered the ERS HDRO directing the ERS to pay Barbara $5,246.85 as Barbara's portion of William's monthly retirement benefit.

## II. STANDARDS OF REVIEW

**Family court decisions**: Family courts generally have wide discretion in their decisions and such decisions "will not be set aside unless there is a manifest abuse of discretion." D.L. v. C.L., 146 Hawai'i 328, 335, 463 P.3d 985, 992 (2020) (citation omitted). Under the abuse of discretion standard, appellate courts do not "disturb the family court's decision unless (1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason." Meyers v. Meyers, 151 Hawai'i 492, 496-97, 517 P.3d 775, 779-80 (App. 2022) (citation omitted).

**Mixed determinations of fact and law**: A conclusion of law "that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." Inoue v. Inoue, 118 Hawai'i 86, 93, 185 P.3d 834, 841 (App. 2008).

**Motion to enforce**: A family court's decision on a motion to enforce is reviewed for abuse of discretion. See Doe v. Doe, 118 Hawai'i 268, 270, 278, 188 P.3d 782, 784, 792 (App. 2008).

**Statute of limitations**: The application of the statute of limitations under HRS § 657-5 is reviewed de novo. See Estate of Roxas v. Marcos, 121 Hawaiʻi 59, 66, 214 P.3d 598, 605 (2009).

**Attorney's fees and costs**: An award of attorney's fees and costs "is in the sound discretion of the trial court, limited only by the standard that it be fair and reasonable." Hamilton v. Hamilton, 138 Hawaiʻi 185, 209, 378 P.3d 901, 925 (2016) (citation omitted).

**Statutory interpretation**: "The interpretation of a statute is a question of law reviewable de novo." Estate of Roxas, 121 Hawaiʻi at 66, 214 P.3d at 605 (citation omitted).

### III. DISCUSSION

#### A. 2020 Appeal

**POE 1**: William argues that Barbara's 2008 motion to enforce was barred by the ten-year statute of limitations in HRS § 657-5.[12] William contends the 1990 Kimura Order Dividing Benefits and 1992 Kimura Order Denying Relief became enforceable when William's HIPD contributions ended, i.e. when he stopped working for HIPD in 1992 (excluding his subsequent working service at the Prosecutor's Office), "because no other source of contribution was stated or allowed by Judge Kimura's Order."

"[T]he statute of limitations for extending a judgment begins to run when the cause of action . . . comes into existence as an enforceable claim or right." Estate of Roxas, 121 Hawaiʻi at 69, 214 P.3d at 608 (cleaned up).

---

[12] HRS § 657-5 (2016), entitled "Domestic judgments and decrees," provides in pertinent part: "Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered."

14

The 1990 Kimura Order Dividing Benefits ordered payments to Barbara to "commence as of the earliest date when [William] shall be eligible to retire." The 2019 DeWeese FOFs/COLs/Order Granting Relief ruled that April 1, 1999, which was the earliest date "William was eligible to retire with 25 years of service credit," was the date upon which "the cause of action for Barbara accrued"; and thus, Barbara's 2008 motion to enforce "was not time barred." These conclusions were based on unchallenged FOF 20, which cited a September 30, 2015 ERS letter that established April 1, 1999 as "the earliest date [William] was eligible to retire with 25 years of service credit[.]"

Here, Barbara's 2008 motion to enforce was timely filed within the ten-year period after her claim accrued on April 1, 1999. See Quitevis v. Quitevis, No. CAAP-11-0000022, 2013 WL 5411714, at *3-*7 (Haw. App. Sept. 27, 2013) (mem. op.) (holding that father's motion for post-decree relief was timely filed under HRS § 657-5 because father's claim did not arise until the condition in the divorce decree triggering mother's performance occurred). The family court's ruling rejecting William's statute of limitations challenge was correct. See Estate of Roxas, 121 Hawaiʻi at 66, 214 P.3d at 605.

**POE 2:** William argues that under the one-year limitation under HRS § 580-56(d),[13] the family court "los[t] jurisdiction to divide the litigants' property after one year" of the 1990 Kimura Order Dividing Benefits. William contends that "[w]hile Judge Van De Car claimed he was only trying to

_____

[13] HRS § 580-56(d) (2018), entitled "Property rights following dissolution of marriage," provides: "Following the entry of a decree of divorce, . . . or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate."

enforce [the] Kimura orders, he altered and changed them thereby violating [HRS] § 580-56(d)" and "that accordingly[,] the subsequent orders and rulings of Judges Bartholomew, Van De Car, Bresciani and DeWeese pertaining to [William]'s retirement be vacated."

The one-year statutory limitation under HRS § 580-56(d) "was intended to apply only in the narrow context of limiting a spouse's right to dower or curtesy in his or her deceased former spouse's estate." Riethbrock v. Lange, 128 Hawai'i 1, 3, 282 P.3d 543, 545 (2012). Subsection (d) does not apply here.

**POE 3**: William argues the 2019 DeWeese FOFs/COLs/Order Granting Relief erroneously disregarded the 1990 valuation evidence before Judge Kimura, because Judge Kimura "ruled that if [William] quit before the 25 years service *with the police*, then the Paul Malama report valuation[14] . . . is/was adopted by the trial [c]ourt for valuation purposes," citing pages 17 to 19 of the June 4, [sic] 1990 hearing transcript. (Footnote and emphasis added.) Relying on the transcript, William claims that because Judge Kimura "ruled" that the Malama valuation report would be used if William "quit before the 25 years service *with the police*," that such ruling was binding on the future presiding judges; and "there was no need or legal justification for the subsequent judges and/or [Barbara] to seek a new or different valuation" because "Judge Kimura had

---

14      Paul Malama was Barbara's retained expert whose report was presented in 1990 (**Malama valuation report**). The report determined that the then present value of William's retirement, as of 1988, was $50,366.09. Malama's determination used a "projected retirement age of 55[,]" which was the earliest an employee could retire "with only 14 years of service and still receive full benefits." Malama used "the ERS's [then] current projected investment yield of 8%" in calculating the then present value of William's ERS benefits.

determined what would happen if [William] did not put in 25 years *of police service*."  (Emphases added.)  William's characterizations of the record and Judge Kimura's statements are inaccurate.

The June 5, 1990 hearing transcript upon which William relies, reflects that Judge Kimura stated:

> And of course if [William], <u>without good cause, quits the retirement system, then</u> of course <u>I'm assuming this issue would be returned back to the Court</u> for obviously then the Court has to determine whether the valuation as of date of final separation should be the issue.
>
> <u>And if that issue arrives, the Court is going to factually and legally find that [Barbara]'s valuation that Mr. Malama put forth is the appropriate present value</u> as of the date of separation in June of 1988.

(Emphases added.)  Judge Kimura's above statements did not constitute a ruling, but expressed an inclination to make a certain finding "if" a particular hypothetical circumstance occurred, "assuming" the issue "would be returned back to the Court."  The language of the hypothetical circumstance was "if [William], without good cause, quits the retirement system," i.e. if William quit before he reached the 25-year service requirement for retirement eligibility.  The judge did not say the 25 years of service were limited to only "police service" or "service with the police" as William claims, which would exclude William's subsequent eight years of service with the Prosecutor's Office.  William's representations of the record, upon which he premises his argument, lack basis.

Finally, assuming arguendo we accepted William's premise that Judge Kimura's remarks constituted a determination that the Malama valuation report would be used if William "quits the retirement system" before 25 years of service, this condition never occurred -- because William *did not quit* before reaching the 25-year service requirement.  The record reflects

that William reached 25 years of service in 1999, and continued working and accumulating service credit beyond 25 years, up until 2007. Thus, the condition precedent that William claims would automatically trigger the use of the Malama valuation report, in fact, never arose. As William raises no other argument to support his contention, this point of error lacks merit.

**POE 4:** William contends the 2019 DeWeese FOFs/COLs/Order Granting Relief erroneously "disregarded the rulings of Judge Kimura by employing a monthly payment amount to value [Barbara]'s share of the retirement"; and erroneously "attempted to utilize the Linson formula in its' [sic] calculations,"[15] when "Judge Kimura refused to award a monthly payment amount using the Linson formula."

The gist of William's argument appears to be that because the 1990 Kimura Order Dividing Benefits did not award monthly payments using the Linson formula, and because Judge Kimura had accepted the Malama valuation report, Judge Kimura's decisions were binding upon the subsequent judges who presided over the dispute. We have already rejected William's argument based on the Malama valuation report in POE 3. William's contention that the 1990 Kimura Order Dividing Benefits, regardless of whether or not it used the Linson formula, could

---

[15] William's reading of Judge DeWeese's order is mistaken. The 2019 DeWeese FOFs/COLs/Order Granting Relief did not "attempt[] to utilize the Linson formula" and instead acknowledged it, but rejected its use because the prior orders did not use it. See COLs 1 and 3.

Under the "Linson formula," the "non-owner party is awarded one-half of a percentage of the owner's retirement[,]" and that percent is calculated by a formula dividing "the number of years credited to retirement during the marriage by the total number of years credited to retirement." Donnelly v. Donnelly, 98 Hawaiʻi 280, 281, 47 P.3d 747, 748 (App. 2002) (citations omitted); Rand v. Rand, No. CAAP-12-0000555, 2016 WL 383158, at *9 n.7 (Haw. App. Jan. 29, 2016) (SDO).

18

not be revisited or changed by future judges -- is unreasonable and unsupportable.  The 1990 hearing transcript that William extensively relies on, reflects that Judge Kimura expressly contemplated that his orders could change based on how future circumstances unfolded, as follows:

> [Barbara's counsel]:  And if he doesn't buy back then I think it's still going to be before age 45.
>
> THE COURT:  No, no, he should -- he'll be eligible to retire when he has 25 years.  And so that would be the latest time in which the benefits would begin to be paid to [Barbara].
>
> [Barbara's counsel]:  So what -- should the order read that at the earliest time when he is qualified to retire, that's when the payments are to be payable to her?
>
> THE COURT:  Well that would --
>
> [William's counsel]:  I don't think so.
>
> THE COURT:  That would be at 25 years of working service.  Because if [Barbara] has to wait longer than that the Court is going to change its ruling.
>
> [Barbara's counsel]:  After 25 years of service?
>
> [William's counsel]:  Working service.
>
> THE COURT:  At the latest.

(Emphases added.)  The circumstance that Judge Kimura verbally indicated would "change [his] ruling" is what in fact occurred in this case -- that Barbara did have to "wait longer" than William's "25 years of working service" for her share of the benefits.  The record reflects that Barbara did not receive any payment until 2021, which was 22 years after the 1999 retirement eligibility date that Judge Kimura had set for Barbara's payment.  William does not point to any other legal authority to support his argument, relying only on the 1990 Kimura Order Dividing Benefits -- an order that William himself did not comply with.  William's argument that the 1990 Kimura Order Dividing Benefits was unalterable by any of the successor judges

19

who presided over Barbara's attempts to enforce that order lacks merit.

**POE 5:** William challenges the award of ten percent statutory interest in the 2019 DeWeese FOFs/COLs/Order Granting Relief "since 1999" because the 1990 Kimura Order Dividing Benefits "was not a money judgment" under HRS Chapter 478 and under HRS §§ 478-2 and 478-3 "no interest should be awarded."

We decline to address this POE because William substantially fails to comply with HRAP Rule 28 requirements to show where and how he preserved this challenge. We have already explained <u>supra</u> how his POE section failed to comply with HRAP Rule 28(b)(3) and (b)(4)(iii), yet we were able to discern William's 28(b)(4)(iii) preservation for most of the POEs from the court orders themselves. We cannot do so with this POE, which challenges the interest award in the 2012 Van De Car Order Granting Relief and the 2019 DeWeese FOFs/COLs/Order Granting Relief; and neither order specifically references or addresses William's challenges to an award of interest. William's argument for this POE, at page 27 of the Opening Brief, claims he "strenuously objected to the interest award," and provides a list of seven different documents appended to his Opening Brief, in which he allegedly preserved his objection. The docket cites for the seven documents contain no page numbers, total hundreds of pages, including William's 133-page Final Argument. We do not address this POE. <u>See</u> HRAP Rule 28(b)(3) and (b)(4)(iii); <u>Haw. Ventures, LLC</u>, 114 Hawaiʻi at 480, 164 P.3d at 738; <u>Teller v. Teller</u>, 99 Hawaiʻi 101, 118, 53 P.3d 240, 257 (2002) (declining to address husband's argument challenging denial of prejudgment interest because he "substantially failed to comply with HRAP Rules 28(b)(3) and 28 (b)(4)(C)").

20

**POE 6:** William challenges the award of attorney's fees and costs to Barbara as not "necessary, fair and reasonable" under HRS § 580-47, because Barbara's economic condition at the time the motion was filed did not establish that it was "just and equitable to impose fees on [William]." William claims the family court erroneously blamed William for the prolonged litigation when Barbara failed to produce a valuation of her share of William's ERS benefits. In this regard, William challenges COLs 37-43, Paragraphs 6-7 of the 2019 DeWeese FOFs/COLs/Order Granting Relief.

HRS § 580-47(f) (2018), entitled "Support orders; division of property," confers discretion upon the family court to order each party "to pay or contribute to the payment of the attorney's fees, costs, and expenses . . . as shall appear just and equitable," after the court considers, inter alia, "the respective merits of the parties, the relative abilities of the parties, the economic condition of either party at the time of the hearing, . . . and all other circumstances of the case." Courts must determine whether attorney's fees are "fair and reasonable" and must consider the parties' financial ability and "the amount necessary for the efficient prosecution or defense of the action." Hamilton, 138 Hawai'i at 209-10, 378 P.3d at 925-26 (citation omitted). For fees "awarded after divorce" pursuant to HRS § 580-47(f), courts may order payment of attorneys' fees and costs that are "just and equitable," evaluating multiple factors including "the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing[.]" Id. at 210, 378 P.3d at 926; HRS § 580-47(f).

Here, the 2019 DeWeese FOFs/COLs/Order Granting Relief considered the parties' economic conditions, and made

unchallenged findings regarding William's higher monthly income; Barbara's net income and her expenses; and William's pension payment "with a 2.5% cost of living increase each year since 2007." The family court concluded that: "William owed and still owes Barbara a portion of his retirement"; there was "no evidence" that William "made any other good faith attempt to pay Barbara a portion of his retirement benefit, even once he commenced receiving his monthly payment in 2007"; "Barbara had no choice but to continue to litigate the matter"; "Barbara was merely trying to obtain that which was awarded to her in 1990"; and "[e]ven as of the date of the trial in this matter in December of 2018, Barbara had not received any portion of William's retirement." The family court concluded that:

> [I]n light of the continued litigation, the fact that [Barbara] still has not received any portion of the asset to which she is entitled, the current limited financial circumstances of both parties, [William]'s greater monthly income, the 2012 award of attorney fees to [Barbara], the total attorney fees incurred by [Barbara], the financial award in favor of [Barbara], and the credible evidence at trial, the Court finds that it is fair and reasonable that [William] contribute to [Barbara]'s additional attorney fees.

In light of the above findings and mixed FOFs/COLs that are not clearly erroneous, the family court's award was not an abuse of discretion. See Inoue, 118 Hawai'i at 93, 185 P.3d at 841; Hamilton, 138 Hawai'i at 209, 378 P.3d at 925.

**POE 7:** William argues that the family court violated William's due process rights because the family court improperly directed Barbara to obtain an actuarial opinion based on a certain calculation method after trial ended; and erroneously admitted that opinion into evidence without allowing William to cross-examine the actuary and without qualifying the actuary as an expert.

22

Here, the December 26, 2019 Order Denying Reconsideration contained an unchallenged finding that at the June 10, 2019 hearing on William's motion for a new trial, William "was permitted to argue and submit evidence as to methodology and his own actuarial calculation based on the [family court's] formula," but William "declined to do so."  The December 26, 2019 DeWeese Order Granting Post-Order Relief that received the 2019 actuarial calculation into evidence also contained an unchallenged finding that:  "The [c]ourt notes that [William] was given an opportunity after the hearing on June 10, 2019 to challenge the methodology, provide his own calculation based on the [c]ourt's ruling, conduct further discovery, and cross examine the witness, all of which [William] declined."  Our review of the record, including the June 10, 2019 hearing transcript, confirms that the above findings are not clearly erroneous.  See Inoue, 118 Hawaiʻi at 93, 185 P.3d at 841.  William's due process challenge lacks merit.

### B.   2021 Appeal

**POE 1:**  William argues that the HDRO under HRS § 88-93.5 allows division of ERS retirement benefits "ordered by a family court in a divorce action" and may not be used, as here, "as a collections mechanism to collect on an outstanding lump sum money judgment[.]"  William claims, among other things, that the HDRO is "patently defective" because it includes more than what is defined as "benefits payable" under HRS § 88-93.5(a); it seeks to enforce a "money judgment" in violation of HRS § 88-93.5(d)(6); attempts to collect a lump sum amount in violation of HRS § 88-93.5(d)(7); and constitutes improper garnishment of William's ERS benefits, in violation of HRS §§ 88-169 (2012)[16]

---

[16]     HRS § 88-169 relates to the payment of pensions and first states that "claims on account of the death of members of the police force, fire

and 653-3 (2016).[17]  William's last argument alleging improper garnishment has merit.[18]

The Order Granting HDRO was issued pursuant to HRS § 88-93.5 (**HDRO statute**), which is entitled, "[d]istribution of property in a divorce action."  HRS § 88-93.5 is contained within HRS Chapter 88, "Pension and Retirement Systems," which governs pensions payable to beneficiaries or retirees of the Hawaiʻi ERS.  HRS § 88-91 (2012 & 2019 Supp.), entitled "[E]xemption from taxation and execution," provides that public employee retirement benefits "shall not be subject to execution, garnishment or any other process" "except as provided in section[] . . . 88-93.5[.]"  The HDRO statute, HRS § 88-93.5, governs the issuance of and requirements for an HDRO, and sets forth how the ERS processes and executes the HDRO.  Subsection (a) provides in pertinent part:

> "Alternate payee" means a spouse or former spouse of a member, a former member who has vested benefit status, or retirant who is recognized by a domestic relations order as having a right to receive all or a portion of the benefits payable by the system with respect to that member, former member with vested benefit status, or retirant.
>
> "Benefits payable with respect to a member, a former member with vested benefit status, or retirant" means any

---

department, or band" shall be paid first if the ERS ever has insufficient money to pay all of the claims against it.  It further states that pensions granted and payable out of the ERS are exempt from "seizure or levy upon attachment, execution, supplemental process" and are not subject to "sale, assignment or transfer by any beneficiary."

[17]    HRS § 653-3 states that no pension from the State is subject to, in relevant part, "garnishment, attachment, or execution upon or in any suit, action, or proceeding at law."

[18]    William's objections to the Order Granting HDRO based on HRS § 88-93.5(d)(6) and (d)(7) are unpersuasive.  Subsection (d)(6) provides that a HDRO "shall not" "[a]ttach a lien" to the amounts payable.  HRS § 88-93.5 (2012 & 2019 Supp.).  Subsection (d)(7) provides that a HDRO "shall not" "[a]ward . . . a portion of the benefits payable . . . and purport to require [ERS] to make a lump sum payment of the awarded portion . . . that are [sic] not payable in a lump sum[.]"  Id.  The HDRO in this case did neither of these things, and subsections (d)(6) and (d)(7) do not apply.

payment required to be made to a member, a former member with vested benefit status, or retirant.

"Domestic relations order" means a judgment, decree, or order, including approval of a property settlement agreement, that:

(1) Relates to the provision of marital property rights to a spouse or former spouse of a member, a former member with vested benefit status, or retirant; and

(2) Is made pursuant to a domestic relations law of this State or another state.

"Hawaii domestic relations order" means a domestic relations order that:

(1) Creates or recognizes the right of an alternate payee, or assigns to an alternate payee, the right to receive all or a portion of the benefits payable with respect to a member, a former member with vested benefit status, or retirant under the system;

(2) Directs the system to disburse benefits to the alternate payee; and

(3) Meets the requirements of this section.

HRS § 88-93.5(a) (2012 & 2019 Supp.) (eff. 2020) (emphases added).

Here, pursuant to HRS § 88-93.5(a), the HDRO "[c]reate[d] or recognize[d]" Barbara's right, as an alternate payee, "to receive all or a portion of the benefits payable" to William, the retirant. "Benefits payable" to William "means any payment required to be made" to William, which means future payments. See id. (emphasis added). Thus, an HDRO may only be used in connection with an alternate payee's right to receive all or a portion of the ERS's benefit payments to the retirant on a going forward basis. See id. The HDRO in this case, however, did not direct payment of prospective "[b]enefits payable" under HRS § 88-93.5(a). The HDRO was a de facto garnishment for Barbara's $792,390.58 total judgment because the

HDRO included the present value of future benefits, attorney's fees, and prejudgment interest, which were never paid to Barbara and remained outstanding. The Order Granting HDRO stated that Barbara was "entitled to [William]'s entire monthly retirement pension, which was last reported as $5,246.85, until the sums due pursuant to the 2019 Orders are satisfied in full." The Order Granting HDRO thus ordered ERS to pay Barbara $5,246.85 from each of William's monthly benefit payments, which was beyond the 31% of $2,832.52 of William's monthly benefit set forth in the 2019 DeWeese FOFs/COLs/Order Granting Relief. While the Order Granting HDRO granted Barbara the $5,246.85 monthly payments "until the sums due" in the 2019 DeWeese Orders were "satisfied in full[,]" the subsequently issued ERS HDRO contained no such limitation, and payments to Barbara under the HDRO could conceivably exceed Barbara's $792,390.58 total judgment. We therefore conclude the Order Granting HDRO and the ERS HDRO exceeded the statutory parameters of HRS § 88-93.5(a) and constituted a de facto garnishment of William's retirement benefits in violation of HRS §§ 88-91 and 653-3.

**POE 2:** William argues the 2021 Order Granting HDRO altered and/or amended the "Judgment" that was already on appeal in CAAP-20-38. It appears the "Judgment" to which William refers, are the 2019 DeWeese Orders. Because the Order Granting HDRO sought to enforce the 2019 DeWeese Orders, rather than amend or alter them, the family court retained jurisdiction to rule on Barbara's Motion for HDRO. See K.S. v. R.S., 151 Hawaiʻi 336, 354, 512 P.3d 702, 718 (App. 2022) ("While a case is up on appeal, the Court may enforce a prior order, but may not modify the prior order." (citing Kakinami v. Kakinami, 127 Hawaiʻi 126, 143-44, 276 P.3d 695, 712-13 (2012)). This contention lacks merit.

26

## IV. CONCLUSION

For the foregoing reasons, we affirm the Family Court of the Third Circuit's thirteen orders listed in the January 23, 2020 Notice of Appeal in CAAP-20-0000038; and reverse the February 9, 2021 Order Granting HDRO, and the March 16, 2021 ERS HDRO in CAAP-21-0000107. We remand solely for the family court to enter a final judgment to clarify the record in FC-D 88-279.

DATED: Honolulu, Hawaiʻi, January 31, 2025.

On the briefs:

Douglas L. Halsted,
for Plaintiff-Appellant.

Moses K.N. Haia III
for Defendant-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge