**Electronically Filed
Intermediate Court of Appeals
CAAP-25-0000558
29-MAY-2026
07:58 AM
Dkt. 74 SO**

NO. CAAP-25-0000558

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF L.B.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 24-00063)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Guidry and Gluck, JJ.)

Mother-Appellant J.B. (**Mother**) appeals from the Family Court of the First Circuit's (**Family Court**) August 5, 2025 "Order Granting the Department of Human Services [(**DHS**)] Child Welfare Section's Request for Temporary Placement of the Child with [D.B.] in California" (**Order**).[1] As the title of the Order suggests, the Family Court granted DHS's request that Mother's minor child, L.B., be temporarily placed with L.B.'s maternal aunt, D.B., in California. Mother appeals, contending that "[t]here was not sufficient evidence for the [Family Court] to have found by preponderance of the evidence that it was in the best interest of the child to be relocated, and in clear violation of reasonable efforts to reunify, as erroneously found

---

[1] The Honorable Courtney N. Naso presided.

on Findings of Fact ('FOF') paragraphs 61, 62, 67, and Conclusions of Law ('COL') paragraph 16."

Upon careful review of the record and the briefs submitted, and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's contentions as follows.

**(1) COL 16 (Jurisdiction):** Mother contends that the Family Court's COL 16 was erroneous. In COL 16, the Family Court concluded that Mother's Notice of Appeal (which had been filed prior to the Family Court's entry of its FOFs and COLs) "should be dismissed for lack of appellate jurisdiction since it is premature as it attempts to appeal an order that is not a final order and it attempts to appeal the interlocutory order, despite Mother not seeking or obtaining allowance from [the Family Court] to file an interlocutory appeal." Both Mother and DHS contend that this court has jurisdiction to review the Order; Appellee-Guardian Ad Litem does not address jurisdiction in its brief.

We agree with Mother and DHS that we have jurisdiction to review Mother's appeal. Mother has been incarcerated and/or placed at the Hawaiʻi State Hospital since May 2024, and therefore has not had physical custody of L.B. for the last two years. L.B. entered foster custody in July 2024. Therefore, the principal effect of the Family Court's August 5, 2025 Order was not a change in Mother's custody of L.B., but a change in placement of L.B. (allowing D.B. to take L.B. to California). Nevertheless, the Order still made a custody determination: the Order provided that "[i]t is contrary to the immediate welfare of [L.B.] to remain in the family home (specifically with Mother)" and that "Mother is not willing or able to provide a safe family home for [L.B.], even with the assistance of a Family Service Plan." This is precisely the type of periodic

review of a custody arrangement that is appealable. As the Hawaiʻi Supreme Court explained in In re Doe, 77 Hawaiʻi 109, 115, 883 P.2d 30, 36 (1994), in reviewing cases from other jurisdictions:

> The [Arizona Supreme Court] held that orders reaffirming findings that children are dependent are also treated as final appealable orders because "[f]rom a practical perspective, each periodic review of a dependency determination is a new determination of whether or not a child is dependent." [In re Yavapai County Juvenile Action No. J-8545, 680 P.2d 146, 150-51 (Ariz. 1984).] The court reasoned that, despite the fact that a determination of dependency does not dispose of all correlative matters, such as assignment of legal custody, and notwithstanding the possibility of duplicative or piecemeal appeals,
>
> > [a] parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials. This does not mean that he or she shall be able to challenge a custodial arrangement every week or every month. What it means is that an aggrieved party may appeal an order issued pursuant to the juvenile court's periodic review of a determination of dependency or of a custodial arrangement[.] Though this may impose an additional burden on our Court of Appeals, it is a burden the Court of Appeals must bear in light of the fundamental right at stake.

(Quoting Yavapai County, 680 P.2d at 150.) (Some alterations in original and some added.) The Family Court's Order is appealable, and we agree with Mother that COL 16 is erroneous. As such, COL 16 is vacated. DHS, however, contends that any error is harmless, and Mother does not explain how COL 16 affects the substance of the Family Court's Order. Thus, although we vacate COL 16, it does not affect our analysis as to the rest of the Order: we will exercise jurisdiction over this appeal, and we turn now to Mother's remaining arguments.

**(2) L.B.'s best interest and FOFs 61, 62, and 67:**
Mother argues that there was insufficient evidence to support the Family Court's ultimate conclusion – that temporary placement of L.B. in California with D.B. is in L.B.'s best

3

interest.  As part of that argument, she contends that three FOFs are clearly erroneous:

> 61. Under the circumstances presented by the instant case, the DHS has exerted reasonable and active efforts to avoid out-of-state placement for [L.B.]
>
> 62. The DHS social worker made reasonable and active efforts to assist the [Resource Care Giver (**RCG**), L.B.'s adult sibling] and alleviate any concerns.
> . . . .
> 67. The DHS' continuing assessment in this case was conducted in an appropriate manner.

Mother argues that RCG "would consider continuing to be the resource care-giver in Hawaii if assisted by the court and DHS regarding her scheduling and daycare" – in other words, L.B. could have remained in Hawaiʻi if DHS had provided additional resources (particularly child care placement) to RCG – resulting in "clear violation of reasonable efforts to reunify."

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion."  Hamilton v. Hamilton, 138 Hawaiʻi 185, 197, 378 P.3d 901, 913 (2016) (citation and block quote formatting omitted).  The family court abuses its discretion where it "disregard[s] rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceed[s] the bounds of reason."  Id.  "Because it is not the province of the appellate court to reassess the credibility of the witnesses or the weight of the evidence, as determined by the family court, the family court is given much leeway in its examinations of the reports concerning a child's care, custody, and welfare."  In re AS, 130 Hawaiʻi 486, 501, 312 P.3d 1193, 1208 (App. 2013), aff'd, 132 Hawaiʻi 368, 322 P.3d 263 (2014) (citation and block quote formatting omitted).

We review the family court's FOFs under the clearly erroneous standard. "A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." Hamilton, 138 Hawai'i at 197, 378 P.3d at 913 (citation and block quote formatting omitted). Additionally, "unchallenged factual findings are deemed to be binding on appeal[.]" Okada Trucking Co., Ltd. v. Bd. of Water Supply, 97 Hawai'i 450, 459, 40 P.3d 73, 82 (2002).

As to the Family Court's ultimate conclusion, there was sufficient evidence to support the determination that it was in the best interest of L.B. to be placed with D.B. in California, and the Family Court did not abuse its discretion in so ordering. Among the Family Court's unchallenged findings of fact are the following:

> 42. After the presentation of the evidence was completed, the Court found by a preponderance of the evidence that based upon the reports submitted pursuant to [Hawai'i Revised Statutes (**HRS**)] §[§] 587A-7 and 587A-18, evidence and testimony adduced at the placement hearing and the record herein, that there is an adequate basis to grant DHS's request for [L.B.] to be placed with adult maternal aunt, [D.B.,] in California.
> . . . .
> 60. The DHS' social work, child protective and child welfare assessments, opinions, and recommendations are based upon the joint expertise of the social worker and the social worker supervisor through the social worker's consultation with the supervisor and the supervisor's supervision and approval.
> . . . .
> 63. The current RCG informed the DHS of her difficulty in supporting [L.B.] due to her limited financial resources and the lack of available childcare programs.
> . . . .
> 66. None of the underlying facts and data upon which the DHS based its opinions, assessments, and recommendations were shown to be untrustworthy.
> . . . .
> 69. The Court found the DHS social worker Michael Lee to be a credible witness, and this Court accepts his testimony in whole.

5

. . . .

72. The Court found [RCG] to be a credible witness, and this Court accepts her testimony in whole.

73. The Court found [D.B.] to be a credible witness, and this Court accepts her testimony in whole.

. . . .

78. There are no subsidies for child care to help the RCG afford child care for [L.B.] and no child care was located in her residential area[.]

79. Although the RCG is [L.B.'s] adult sibling and current Resource Caregiver, she testified credibly she wants to be a "sister" and not a "single parent" to [L.B.]

80. The Court found the RCG credible in her testimony that she is not capable to care for [L.B.] alone, without assistance from [D.B.] due to several issues, not just child care alone, but also due to the demands of her full-time employment, lack of funds and the fact she [RCG] is still young.

81. The RCG testified that [D.B.] is the primary caregiver for [L.B.], has cared for [L.B.] more than the RCG, and, as a result, [L.B.] is more bonded to [D.B.] than to the RCG.

82. The RCG has needed to call in "sick" from work and/or take time off from work when [D.B.] is not on O‘ahu to help the RCG care for [L.B].

83. The RCG credibly testified [D.B.] takes [L.B.] to the doctor and provides "all the nurturing" while RCG is at work.

84. The RCG supports the placement of [L.B.] with [D.B.] in California and testified credibly that the Child's relationship with [D.B.] is "solid" and "bonded."

. . . .

90. RCG testified credibly that [D.B.] is the family "matria[r]ch" and "backbone," was a second mom for RCG and provided stable support for RCG, and is likewise now providing love and affection and appropriate physical and emotional support for [L.B].

. . . .

94. The Court found the RCG credible when she testified it is her position that it would be in [L.B.'s] best interest and promote improved mental health for the RCG if [L.B.] was placed with [D.B.], whom the RCG believes to be protective of [L.B.] and best equipped to raise and care for [L.B.]

. . . .

100. Commencing in March 2025, [D.B.] was travelling back and forth between California and Hawai‘i to care for [L.B.]

101. The Court found [D.B.] credible when she explained the RCG often works "in the field," does not

always have set hours, sometimes is gone overnight, and the RCG does not have any family support on O'ahu.

. . . .

116. [D.B.] took leave from her full-time employment to come to Hawai'i and help the RCG care for [L.B.], but now needs to return to California to return to her full-time employment.

117. [D.B.] has credible credentials and skills to care for [L.B.] as a caregiver, and will place [L.B.] in appropriate child care program . . . .

. . . .

119. [D.B.] is a protective person and protective of [L.B.]

. . . .

123. The DHS utilized reasonable efforts and placed [L.B.] with family.

124. The Court found Mr. Lee credible in his testimony that he engaged with Mother regularly, but acknowledged there was a lag in communication [at several points].

. . . .

128. The DHS has concerns about the RCG's access to resources and being able to maintain care for [L.B.] without support from [D.B.]

. . . .

133. The Court found Mr. Lee credible when he testified he reached out to child care providers, but foster youth are not prioritized, so [L.B.] was placed on waitlists.

134. Mr. Lee and [D.B.] both testified child care is much more accessible in California.

. . . .

137. Mr. Lee observed [D.B.] and [L.B.] to be "closely bonded" and [L.B.] appears to be comfortable with [D.B.]

138. Mr. Lee credibly testified he has no concerns with [D.B.'s] parenting skills and he observed her to participate in age appropriate activities with [L.B].

139. The DHS prioritizes familial placement for [L.B.]

140. Mr. Lee testified the DHS is in favor of [L.B.] being placed with maternal aunt, [D.B.], in California.

141. The [Court Appointed Special Advocate] is in favor of [L.B.] being placed with [D.B.] in California.

(Emphasis added.)  Based on these unchallenged findings, the Family Court concluded that placing L.B. with her aunt (with whom she was bonded) in California (where childcare was

available), while Mother remained incarcerated and/or hospitalized (and therefore unable to provide a stable home for L.B.), was in L.B.'s best interest. RCG, on the other hand, did not have good access to child care, did not have the capacity or the resources to care for L.B. as a single "parent," and herself believed that it was in L.B.'s best interest to be placed with D.B. On this record, we conclude that substantial evidence supported the Family Court's conclusion to place L.B. in California with D.B.

Similarly, the Family Court's FOFs 61, 62, and 67 are not clearly erroneous, as they are supported by other (unchallenged) factual findings as set forth above. DHS considered placement in Hawaiʻi: DHS concluded that the lack of childcare was one factor – but not the only factor – that prevented RCG from caring for L.B. in Hawaiʻi. DHS also prepared and filed Safe Family Home Reports detailing its assessments and its findings therefrom. True, "DHS is under an obligation to provide a reasonable opportunity to parents through a service plan to reunify the family." In re Doe, 100 Hawaiʻi 335, 343, 60 P.3d 285, 293 (2002). As the Family Court noted, however, this requirement is qualified by the paramount concern of the Child Protective Act (**CPA**) – the health and safety of the child – and the CPA is to be "liberally construed to serve the best interests of the children affected . . . ." HRS § 587A-2 (2018). The Family Court's FOFs are not clearly erroneous. Moreover, there are numerous FOFs that are not challenged on appeal that support the Family Court's conclusion that placing L.B. with D.B. in California was in L.B.'s best interest. The Family Court did not abuse its discretion in reaching this determination.

Based on the foregoing, we affirm the August 5, 2025 "Order Granting the Department of Human Services Child Welfare

Section's Request for Temporary Placement of the Child with [D.B.] in California."

DATED:  Honolulu, Hawaiʻi, May 29, 2026.

On the briefs:

Tae Chin Kim,
for Mother-Appellant.

Franklin T. Fegurgur,
for Petitioner-Appellee.

Cheryl Y. Arakaki,
For Court Appointed Special
Advocates.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Kimberly T. Guidry
Associate Judge

/s/ Daniel M. Gluck
Associate Judge